888 A.2d 564

COMMONWEALTH of Pennsylvania, Appellee/Cross–Appellant,

v.

Ronald COLLINS, Appellant/Cross–Appellee.

Supreme Court of Pennsylvania.

Submitted Jan. 27, 2004.

Decided Dec. 27, 2005.

Michael Wiseman, Philadelphia, for Ronald Collins.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for Com.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

Ronald Collins, Appellant herein, appeals from the order of the Court of Common Pleas of Philadelphia County denying his guilt phase claims under the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 et seq. The Commonwealth appeals from that same order, which granted Appellant relief in the form of a new penalty phase hearing. For the reasons stated herein, we affirm the Order of the Court of Common Pleas.

On October 21, 1994, a jury convicted Appellant of two counts of first degree murder and one count each of aggravated assault, reckless endangerment, and possession of an instrument of crime.[1] Following the penalty phase hearing, the jury found two aggravating circumstances related to each of the murders and one mitigating circumstance.[2] The jury then found that the aggravating circumstances outweighed the mitigating circumstance in both cases and fixed the penalty at death. This court affirmed the sentences of death on Novem-

1. The facts underlying Appellant's convictions are set forth at *Commonwealth v. Collins*, 550 Pa. 46, 703 A.2d 418 (1997).

2. With regard to the first murder, the jury found that Appellant killed a prosecution witness to a murder or other felony that he committed for the purpose of preventing the witness from testifying against him, 42 Pa.C.S. § 9711(d)(5), and that Appellant had been convicted of another murder either before or at the time of the offense at issue, 42 Pa.C.S. § 9711(d)(11). With regard to the second murder, the jury found the same (d)(11) aggravator and that the killing was committed in furtherance of Appellant's drug business, 42 Pa.C.S. § 9711(d)(14). The catchall mitigating circumstance, 42 Pa.C.S. § 9711(e)(8), was found for both murders.

ber 20, 1997, and the United States Supreme Court denied his petition for certiorari on November 30, 1998.

The Governor of Pennsylvania signed a warrant authorizing Appellant's execution for February 4, 1999. Appellant then filed a Stay of Execution and a pro se Petition for Post Conviction Collateral Relief on December 17, 1998. The PCRA court stayed Appellant's execution pending resolution of the PCRA litigation and appointed new counsel. New counsel filed an amended Petition on August 15, 2000. The PCRA court held evidentiary hearings on Appellant's Petition.

Following the evidentiary hearing, the PCRA court affirmed the first degree murder convictions but granted a new penalty phase hearing. In granting a new penalty phase hearing, the PCRA court analogized this case to the United States Court of Appeals for the Third Circuit case of *Jermyn v. Horn,* 266 F.3d 257 (3d Cir.2001), in which the court concluded that the lack of directed and specific testimony about Jermyn's childhood and its impact on Jermyn's mental illness left the jury's awareness of his mental state incomplete.

■ It is from this order that the parties appeal. Initially, we note that this court has jurisdiction over Appellant's petition as a direct appeal from the denial of post conviction relief in a death penalty case. 42 Pa.C.S. § 9546(d). Additionally, this court has jurisdiction to review the denial of Appellant's guilt phase claims even though the PCRA court vacated Appellant's sentence of death. *See Commonwealth v. Bryant,* 566 Pa. 307, 780 A.2d 646, 648 (2001) (indicating that review of the PCRA court's decision denying guilt phase relief should precede the imposition of a new sentence by the trial court).

Turning to Appellant's guilt phase claims, the PCRA court concluded that two of Appellant's claims were previously litigated. In response, Appellant argued that this court's case law holding that "previously litigated" issues, as defined by 42 Pa.C.S. §§ 9543(a)(3) and 9544(a)(2), could not be overcome by forwarding a claim of counsel's ineffectiveness conflicted with the Sixth Amendment right to effective assistance of counsel. We acknowledged that Appellant's argument was worthy of

closer consideration and ordered the parties to file supplemental briefs on the following issue:

> Whether the previously litigated doctrine as interpreted by this court as precluding claims of ineffectiveness that are raised for the first time in a collateral proceeding is constitutional and if not, what the proper interpretation of "previously litigated" is as set forth in 42 Pa.C.S. § 9544(b).[3]

Per Curiam Order of the Supreme Court of Pennsylvania, 9/30/2004.

Appellant's general argument is simply that an interpretation of "previously litigated" that has the effect of precluding claims of ineffectiveness, which have not been raised previously, does not give adequate consideration to rights granted in the federal and state constitutions or to the nature of ineffectiveness claims. In support of his argument, Appellant contends that the statutory language is clear and merely prohibits a defendant from presenting an "identical" issue. Appellant then argues that this court's interpretation of "previously litigated" as encompassing claims of counsel's ineffectiveness ignores that the discrete issue of counsel's ineffectiveness has not been litigated. Appellant points out that a defendant has a right to effective assistance of counsel at trial and on direct appeal under both the federal and Pennsylvania Constitutions. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (interpreting the U.S. Constitution amend. VI as including the right to effective assistance of direct appeal counsel); PA. CONST. art. 1, § 9 and art. V, § 9. Thus, Appellant concludes that this court's interpretation of "previously litigated" to include claims attacking counsel's effectiveness undermines the constitutional right to counsel by precluding a defendant from attacking counsel's performance.

Appellant continues that an interpretation of "previously litigated" as precluding ineffectiveness claims fails to acknowledge that post-conviction review is often the only means by which a criminal defendant can challenge the effectiveness of

---

**3.** Although the order listed the relevant section as 9544(b), as both parties recognized, the iteration of that subsection was in error and the relevant section for purposes of this order was 42 Pa.C.S. § 9544(a)(2).

54

his prior counsel, including his direct appeal counsel. Appellant also points out that the reason for the statutory provision—the concern with finality and the prevention of repetitive and vexatious filings—is of less moment today than it was 35 years ago, since this court has strictly interpreted the one-year time limitations of the PCRA, which by itself prevents repetitive and vexatious filings. For these reasons, Appellant offers that this court should interpret § 9544(a)(2) literally, as limiting only those filings which raise claims of trial court error or ineffectiveness that were actually presented to and decided on direct appeal.

The Commonwealth responds that the PCRA's previous litigation provision does not infringe upon a defendant's constitutional right to counsel. Rather, the provision simply precludes a previously rejected claim of trial court error from serving as the basis of an allegation of counsel's ineffectiveness. Such a result is consonant with the PCRA's bedrock principles of finality. *See Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998); *Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271, 287 (2002). Thus, the PCRA's unambiguous provision should continue to be interpreted to foreclose repetitive claims that were litigated on direct appeal and to ensure finality in judgments. The Commonwealth asserts that the "previous litigation" bar is merely the codification of the "law of the case" doctrine, which provides that later phases of a litigated matter should not reopen issues decided by another judge of the same court or by a higher court involved in the earlier phases of the matter. Furthermore, in the interest of *stare decisis*, this court should uphold its numerous cases interpreting the PCRA's previous litigation provision. The Commonwealth points out that this court has consistently interpreted the previous litigation doctrine to preclude reconsideration of a claim that serves as the basis for an allegation of ineffectiveness if the underlying issue was rejected on direct appeal. E.g., *Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33 (2002); *Commonwealth v. McCall*, 567 Pa. 165, 786 A.2d 191 (2001); *Commonwealth v. Carpenter*, 555 Pa. 434, 725 A.2d 154 (1999). For all these reasons, the

Commonwealth concludes that this court should continue to interpret the PCRA's previous litigation provision to preclude reconsideration of an issue, even when the issue is raised in the context of ineffective assistance of counsel.

With that in mind, we turn to the relevant statutory provisions, which are as follows:

(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

\* \* \* \* \* \*

(3) That the allegation of error has not been previously litigated or waived.

42 Pa.C.S. § 9543(a)(3).

(a) Previous litigation.—For purposes of this subchapter, an issue has been previously litigated if:

\* \* \* \* \* \*

(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue;

42 Pa.C.S. § 9544(a)(2).[4]

From these subsections, it is clear that the relevant statutory inquiry is the term "issue." 42 Pa.C.S. § 9544(a)(2). There is nothing in this subsection defining "issue". That term, as used in "pleading and practice," is understood to mean "a single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other." BLACK'S LAW DICTIONARY, 6th ed. 831. Thus, "issue" refers to the discrete legal ground that was forwarded on direct appeal and would have entitled the defendant to relief.[5] *See, e.g., Sanders v. United*

---

4. Under the predecessor to the PCRA, post-conviction review was only available where the error resulting in the conviction has not been "finally litigated or waived," 19 P.S. § 1180–3(d). An issue was "finally litigated if the Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue." 19 P.S. § 1180–4(a)(3).

5. 42 Pa.C.S. § 9544(a)(3) refers specifically to issues raised on collateral review, but has no relevance to our discussion today.

*States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (defining "grounds" as "a sufficient legal basis for granting the relief sought by the applicant"). The theories or allegations in support of the ground are simply a subset of the issue presented. Stated another way, there can be many theories or allegations in support of a single issue, but ultimately, § 9544(a)(2) refers to the discrete legal ground raised and decided on direct review. Thus, at the most basic level, this section prevents the relitigation of the same legal ground under alternative theories or allegations. *See, e.g., Commonwealth v. Wilson,* 452 Pa. 376, 305 A.2d 9 (1973) (concluding that a new theory in support of the same claim of trial counsel ineffectiveness was unavailing since the claim was decided adversely to petitioner in his previous direct appeal); *Commonwealth v. Slavik,* 449 Pa. 424, 297 A.2d 920 (1972) ("A defendant is not entitled to relitigate the validity of his plea every time he offers a new theory or argument which he had not previously advanced."). Based upon our understanding of the term "issue" for purposes of § 9544(a)(2), the question before us today is simply whether a claim of ineffectiveness is a discrete legal ground or merely an alternative theory in support of the same underlying issue that was raised on direct appeal.

It was not until the mid–1990's that this question appeared with relative frequency. The origin of this question can be traced to this court's decision in *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994), wherein we set forth, in cursory fashion, the burdens of proof a PCRA petitioner has including that

> post-conviction review of claims previously litigated on appeal cannot be obtained **by alleging ineffective assistance of prior counsel** and by presenting new theories of relief to support previously litigated claims. *Commonwealth v. Wilson,* 452 Pa. 376, 305 A.2d 9 (1973).

*Peterkin,* 649 A.2d at 123 (emphasis added). The court did not explore the contours of this phrase, but in applying this rule to the facts of the case, we held a claim "previously litigated" when Peterkin raised claims of ineffectiveness on

direct appeal and then attempted to raise these same ineffectiveness claims on collateral review. *Id.* at 124. Thus, the meaning of "previously litigated" in that context was clear since the appellant was attempting to raise the same issues in both proceedings. The court also noted, however, that the appellant also challenged appellate counsel's conduct for failing to raise or brief this issue on appeal. This claim was found to be "in substance, the one discussed above and therefore, is deemed previously litigated." *Id.* at 124 n. 3.

Following *Peterkin,* this phrase was often employed in a way that claims of trial counsel ineffectiveness that were based on an issue that was raised on direct appeal were precluded as "previously litigated"; and the merit of the claim relating to counsel's conduct and the adequacy of his representation were never examined. *See, e.g., Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877 (1995) (reversed on other grounds); *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352 (1995). Indeed, in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 703 (1998), we explained this concept more fully as follows:

> Appellant's attempt to evade this requirement by claiming that appellate counsel must have been ineffective because he should have succeeded on this issue if properly presented is unavailing. The requirement that a claim for PCRA relief not be previously litigated would be rendered a nullity if this court could be compelled to revisit every issue decided on direct appeal upon the bald assertion that that decision was erroneous.

*Albrecht,* 720 A.2d at 703; *see also Commonwealth v. Abu–Jamal,* 574 Pa. 724, 833 A.2d 719 (2003); *Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33 (2002); *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935 (2001); *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999). Thus, our case law has analogized a claim of counsel ineffectiveness to an "alternative theory" or allegation in support of the same issue.[6] We

---

6. Of course, as with many general rules, there have been exceptions. Most notably, this court has recognized an exception akin to an "after-discovered" evidence exception when the claimant is presenting new

have done so, however, without fully analyzing whether the nature of an ineffectiveness claim is a discrete legal ground that would entitle a defendant to relief, and not some alternative theory or allegation. This distinction has been highlighted in our recent case law and we have emphasized that the underlying claim of error is different from the collateral claim of ineffectiveness in circumstances different from those at issue in this case. *See Commonwealth v. Gribble,* 580 Pa. 647, 863 A.2d 455, 471–72 (2004); *Commonwealth v. Jones,* 572 Pa. 343, 815 A.2d 598, 615 (2002); *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 535 (2001). Moreover, by citing to *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), we have indicated that while the underlying claim of trial court error is relevant to assessing a claim of ineffectiveness, it is only relevant to the extent that it impacts assessment under the three prong ineffectiveness test.[7] *Gribble,* 863 A.2d at 472; *Jones,* 815 A.2d at 615; *Williams,* 782 A.2d at 535. Thus, we now turn our attention to the nature of an ineffectiveness claim.

As noted above, the United States and Pennsylvania Constitutions provide a defendant with the right to effective assistance of counsel. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (interpreting the U.S. Constitution amend. VI as including the right to effective assistance of direct appeal counsel); PA. CONST. art. 1, § 9 and art. V, § 9. In *Kimmelman,* the court considered whether a defendant could raise a Sixth Amendment, ineffectiveness claim, on collateral review attacking counsel's performance with regard

evidence in support of the ineffectiveness claim. *See Commonwealth v. Moore,* 580 Pa. 279, 860 A.2d 88, 98 n. 5 (2004) (noting that the issue does not rest on "previously litigated evidence"); *Commonwealth v. Miller,* 560 Pa. 500, 746 A.2d 592, 602 nn. 9 & 10 (2000) (holding that claim involving unchallenged evidence was not previously litigated).

7. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court set forth a performance and prejudice test for evaluating counsel's conduct. In Pennsylvania, we have adapted the *Strickland* test as set forth in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987) and require a defendant to prove three prongs—that the claim has arguable merit, that counsel had no reasonable basis for his action or omission, and that the defendant was prejudiced by counsel's conduct.

to a Fourth Amendment claim. The case of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) established that Fourth Amendment claims were not available for purposes of habeas corpus review, since the remedy for a Fourth Amendment violation—the exclusionary rule—existed to deter police conduct. Thus, in *Kimmelman,* the state argued that a Sixth Amendment claim raising a Fourth Amendment issue, i.e., trial counsel's failure to litigate a suppression motion, was barred based on the reasoning of *Stone.*

■ The Supreme Court rejected the prosecution's argument since claims related to the Fourth Amendment and Sixth Amendment were distinct. Indeed, "while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values." *Kimmelman,* 477 U.S. at 375, 106 S.Ct. 2574. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Id.* at 374–75, 106 S.Ct. 2574.

■ "The right to counsel is a fundamental right of criminal defendants; it assures the fairness and thus the legitimacy of our adversary process." *Id.* at 377, 106 S.Ct. 2574. "Without counsel the right to a fair trial itself would be of little consequence." *Id.* The court then noted that collateral review is frequently the only means through which an accused can effectuate the right to counsel and extending *Stone* to prohibit review of ineffectiveness claims would effectively deny a defendant the opportunity to vindicate the Sixth Amendment right to counsel.[8] *Id.* at 378, 106 S.Ct. 2574. Accordingly, the

8. As the United States Supreme Court and Pennsylvania jurisprudence has developed, this point has more force, since both courts have explained, more fully, the distinction between direct review and collateral review. In *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), the court explained that the evidence introduced at trial will be devoted to issues of guilt or innocence. *Id.* at 505, 123 S.Ct. 1690. Thus, the resulting record in most cases will not disclose the facts necessary to decide the ineffectiveness claims. *Id.;* see also *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). On

court could not conclude, as it had in *Stone*, "that restriction of federal habeas review would not severely interfere with the protection of the constitutional right asserted by the habeas petitioner." *Id.*

We find that *Kimmelman* lends support to Appellant's argument regarding the distinct nature of Sixth Amendment claims and highlights that the underlying claim of error is only one component of the Sixth Amendment ineffectiveness claim. At least one other court has come to the same conclusion.[9] In *Molina v. Rison*, 886 F.2d 1124 (9th Cir.1989), the Ninth Circuit Court of Appeals considered whether an allegation that counsel failed to move for the recusal of the trial judge alleged in defendant's first petition under 28 U.S.C. § 2255, barred a subsequent claim seeking to raise the recusal issue directly in a second petition. After noting the existence of *Kimmelman*, the court explained that "a claim of ineffective assistance with regard to an issue is 'distinct' from any claim concerning the underlying issue itself, 'both in nature and in the requisite elements of proof.'" *Id.* at 1130. Based upon *Kimmelman*, the court concluded that "the basic nature and thrust of Molina's recusal claim is different from that of his ineffective assistance claim." *Id.* Accordingly, Molina's recusal claim was not successive, and he was not barred from raising the recusal issue directly in his second petition under § 2255.

■ What is clear from *Kimmelman* and *Molina* is that ineffectiveness claims are distinct' from those claims that are raised on direct appeal. The former claims challenge the adequacy of representation rather than the conviction of the

the other hand, claims of ineffective assistance of counsel concern the adequacy of representation and the appellate court is not the forum best suited to assess those facts. *Massaro*, 538 U.S. at 504, 123 S.Ct. 1690; *Grant supra.* For these reasons, the *Massaro* Court concluded that the nature of ineffectiveness claims suited them to collateral review.

9. We note that that there are other jurisdictions that adhere to a similar interpretation of "previously litigated" that this court has recognized since *Peterkin*. *See Underwood v. United States*, 15 F.3d 16 (2d Cir. 1993); *In re Shriner*, 735 F.2d 1236, 1240 (11th Cir.1984); *Bannister v. State*, 726 S.W.2d 821 (Mo.Ct.App.1987).

defendant. Accordingly, we are persuaded by Appellant's position that a Sixth Amendment claim of ineffectiveness raises a distinct legal ground for purposes of state PCRA review under § 9544(a)(2). Ultimately, the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal, but a Sixth Amendment claim raises a distinct issue for purposes of the PCRA and must be treated as such. *Cf. Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 462 (2004) (noting alternatively that even if the ineffectiveness claim was not previously litigated, the severance theory underlying the claim of ineffectiveness fails for the same reason the *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) theory failed on direct appeal).[10] For these reasons, we believe that a PCRA court should recognize ineffectiveness claims as distinct issues and review them under the three-prong ineffectiveness standard announced in *Pierce*.[11] Consistent with this standard, the petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance. *Pierce*, 527 A.2d at 976–77.

Turning to the instant case, we now consider the merits of those claims dismissed by the PCRA court as previously litigated. *See, e.g., Blackwell v. Com., State Ethics Com'n*, 527 Pa. 172, 589 A.2d 1094, 1101 (1991) (holding that new rules of procedure are commonly applied only to the case currently pending before the court). Furthermore, we will

10. Furthermore, although in many cases the claim will be dismissed for the reasons discussed on direct appeal, this is not a distinction without a difference, because it is a distinct, constitutional claim that deserves its own analysis regardless of the result of that analysis. Furthermore, we can envision circumstances where a defendant may be entitled to relief on an ineffectiveness claim attacking counsel's performance on direct review.

11. Of course, an exception to this, which should rarely occur following our decision in *Grant, supra* n. 9, would occur if a claim of ineffectiveness was raised on direct appeal and a claimant seeks to raise the same claim of ineffectiveness on collateral review.

remand this matter to the PCRA court for further consideration only if we find that the claims that were considered "previously litigated" by the PCRA court are in need of further elucidation and cannot be evaluated by this court. *Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003).[12]

The first claim that the PCRA court dismissed as previously litigated was a claim that trial counsel was ineffective for failing to raise a due process claim in support of the issue that the trial court should not have joined the aggravated assault charge from an unrelated shooting to the murder charges involved in the instant case.[13]

On direct appeal, Appellant argued that the trial court erred in denying his motion to sever the charge of aggravated assault from the first degree murder convictions. *Collins,* 703 A.2d at 422. In denying Appellant's claim, we explained that the proper test in considering a motion to sever offenses that are not based on the same act, requires a consideration of: whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger or confusion; and whether the defendant will be unduly prejudiced by the consolidation. *Id.* (*citing Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491, 496–97 (1988) for the proposition of the proper rule for deciding a motion to sever under the Pennsylvania Rules of Criminal Procedure). We analyzed each of these considerations and concluded that the evidence of the offenses of aggravated assault and first degree murder would have been admissible in separate trials for each other as either evidence of motive, to demonstrate the natural develop-

12. On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and are free from legal error. *Commonwealth v. Abu–Jamal,* 574 Pa. 724, 833 A.2d 719 (2003) (citing *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94 (2001)). Our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. *See, e.g., Commonwealth v. Meadius,* 582 Pa. 174, 870 A.2d 802 (2005).

13. For ease of reference, "trial counsel" will refer to both trial and appellate counsel, since the same counsel represented Appellant through his direct appeal to this court.

ment of the case, or evidence of intent; a jury was capable of separating the evidence since the criminal offenses were distinguishable in time, space, and the characters involved; and Appellant was not unduly prejudiced by consolidation. *Id.* at 423.

Appellant now forwards his claim of ineffectiveness by relying on the Due Process Clause of the United States Constitution. By Appellant's own admission, however, the factors to consider in assessing a due process claim when offenses have been joined is similar to the test we employed on direct appeal. *See id.* In fact, according to Appellant, in applying the federal, due process test, the court must consider the same three factors that we considered on direct appeal in addition to whether the trial court gave an adequate limiting instruction. Appellant's Brief at 55. As we made clear in our discussion of "previously litigated" claims, although we will analyze a distinct claim of ineffectiveness that is based on the underlying issue that was litigated on direct appeal, in many cases, those claims will fail for the same reasons as they failed on direct appeal.

In considering the merits of Appellant's claim, we need not reassess the Due Process claim anew, since the factors that we considered on direct appeal are the same as the factors Appellant now asks us to consider on collateral review. The additional factor that exists under the federal test as set forth by Appellant provides no relief, as Appellant does not claim that the trial court failed to give an "adequate limiting instruction," and our independent review of the record reveals that the trial court gave such an instruction. N.T., 10/20/1994, at 20. Accordingly, for the reasons discussed on direct appeal, Appellant cannot establish that this claim has arguable merit, and this claim of ineffectiveness fails.

The second claim that the PCRA court dismissed as "previously litigated" also fails to entitle Appellant to relief. On direct appeal, Appellant raised a hearsay challenge to the testimony of two witnesses. This court determined that the hearsay statements were properly admitted under the state of mind exception to the hearsay rule. *Collins,* 703 A.2d at 425.

64

Appellant now argues that counsel was ineffective for failing to forward a claim that the statements violated the Confrontation Clause. Specifically, Appellant argues that the state of mind exception to the hearsay rule is neither "firmly rooted" nor do the statements herein contain "particularized guarantees of trustworthiness" sufficient to evade application of the Confrontation Clause.

The statements Appellant is referring to were made by Dawn Anderson, one of the victims in the instant case, who made statements on the night she was killed that "they" were going to shoot her in the head, N.T., 10/19/1994, at 99, and that she was going "to work" around the corner and would be back if "they" don't kill me, N.T., 10/18/1994, at 85. Both of these statements were introduced through the witnesses to whom the statements were made. One of the witnesses was allowed to further testify that she understood "they" to mean Appellant and his co-actor, Shawn Wilson, N.T., 10/18/1994, 109–10. During closing arguments, the prosecutor returned to the hearsay statements and emphasized that the statements demonstrated where Dawn Anderson was going when she left the witnesses' presence and her words "shortly before she was killed," in conjunction with the other evidence, pointed to one thing: "that [Appellant] killed those people." N.T., 10/20/1994, at 53.

The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the States through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). At its most basic level, the Sixth Amendment's Confrontation Clause seeks to ensure that the trial is fair and reliable by preserving an accused's right to cross-examine and confront the witnesses against him. *See Commonwealth v. Robins*, 571 Pa. 248, 812 A.2d 514, 520 (2002) (Opinion Announcing the Judgment of the Court).

One way in which the Confrontation Clause can be violated is by the admission of hearsay statements against the defendant as substantive evidence. In those instances, the court must consider the unavailability of the declarant and the reliability of the statements. *Ohio v. Roberts*, 448 U.S. 56, 66–67, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[14] In assessing the reliability of the statements, the court must decide whether the statements were admitted pursuant to a "firmly rooted hearsay exception" or the circumstances in which the statements were made contained "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.[15]

We have explained that whether an exception is "firmly rooted," for purposes of Sixth Amendment jurisprudence is to be treated as a question of federal law. *Robins*, 812 A.2d at 524. In that vein, we note that several federal jurisdictions considering this question have concluded that the state of mind exception is a firmly rooted exception to the hearsay law. *Horton v. Allen*, 370 F.3d 75, 85 (1st Cir.2004); *Evans v. Luebbers*, 371 F.3d 438 (8th Cir.2004) (relying on *Lenza v. Wyrick*, 665 F.2d 804 (8th Cir.1981)); *Hayes v. York*, 311 F.3d 321, 324–25 (4th Cir.2002); *Moore v. Reynolds*, 153 F.3d 1086, 1107 (10th Cir.1998) (relying on *Lenza v. Wyrick*, 665 F.2d 804 (8th Cir.1981)); *Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir.1988). The federal courts have reasoned that the exception has been a longstanding one that has been recognized by every jurisdiction in the country. *Horton*, 370 F.3d at 85; *Hayes*, 311 F.3d at 325. Further, such statements are deemed reliable because of their "spontaneity and resulting probable sincerity." *Horton, supra (quoting* McCormick on

**14.** There is no argument that the declarant was not "unavailable" and such argument would have been unavailing since Dawn Anderson was killed and, therefore, was unavailable.

**15.** The test set forth in *Roberts* has been superseded by the decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), at least with regard to testimonial evidence. *Crawford*, however, is unavailable to claimants on collateral review, and therefore, the proper test is that set forth in *Roberts*. *Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 464 n. 7 (2004).

Evidence, § 274 (5th ed.1999)). For these reasons, the rationale behind the state of mind exception is similar to the other exceptions that have been deemed "firmly rooted."

 We find the reasoning of the federal courts persuasive and see no reason to conduct an independent review of the exception. Accordingly, we agree that the state of mind exception is "firmly rooted" for purposes of the Confrontation Clause and Appellant cannot establish that his clam of ineffectiveness has arguable merit.

The next claim that Appellant raises is that the trial court unduly restricted Appellant's ability to present his defense by prohibiting him from showing the jury a picture of his coactor, Shawn Wilson, holding a gun that was the same or similar to the murder weapon used to kill the two victims in this case. The trial court questioned the relevance of the photo and ruled that such evidence was only admissible if Appellant could establish when the photo was taken. Appellant argues that trial counsel was ineffective for failing to attempt to have one of the Commonwealth's witnesses, Mark Sisco, date the photograph, since "effective counsel" would have asked the witness if he could date the photograph.[16] Appellant also urges that trial counsel was ineffective for failing to raise the issue of trial court error on direct appeal. Alternatively, Appellant argues that the Commonwealth erred in failing to reveal this information to trial counsel. According to Appellant, trial counsel did not know of the existence of this "critical exculpatory evidence" until it was revealed to him by present counsel.

As demonstrated by Appellant's arguments, Appellant raises this claim in three different ways, and we will address them seriatim.[17] First, Appellant argues that the trial court erred

16. Apparently at Shawn Wilson's trial, which occurred two months after Appellant's trial, Marc Sisco, testified that the photo was taken around November or December, or about six months, before the instant murders occurred. Mark Sisco also testified at Appellant's trial.

17. Appellant also alleges that the errors by the trial court, trial counsel, and the Commonwealth denied him due process. As discussed *infra,*

by excluding this evidence and that trial counsel was ineffective for failing to raise this claim of trial court error on direct appeal. In order to prevail on this claim, Appellant must establish trial court error to establish that the claim has arguable merit.

 It is well settled that the admission of evidence is within the sound discretion of the trial court. *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 350 (1998). The threshold inquiry with admission of evidence is whether the evidence is relevant. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* (quoting *Commonwealth v. Spiewak*, 533 Pa. 1, 617 A.2d 696, 699 (1992)).

 In this case, the trial court questioned the relevance of the photograph and concluded that the photograph was only relevant if the defense could establish that the photograph was taken at or near the time of the murders in question. This was reasonable, since a temporal relationship between the photograph and the murders would lend some credence to the inference that Appellant was attempting to establish—that Wilson was the shooter. Trial counsel, however, did not establish the date of the photograph and therefore, the trial court did not err in excluding the proffered evidence. Accordingly, Appellant cannot establish that his claim regarding trial counsel's failure to raise this issue on appeal had arguable merit, and Appellant is not entitled to relief on this claim.

 Alternatively, Appellant argues that trial counsel was ineffective for failing to question Mark Sisco as to whether he knew the date this photo was taken. The prejudice Appellant alleges is that he was prevented from presenting his defense that Shawn Wilson committed the murders instead of him. That argument, however, is unavailing, since there was nothing that prevented Appellant from arguing that there was

however, we find that there were no errors and thus, Appellant's due process argument is also without merit.

68

another person in the apartment at the time of the shooting who had a gun. N.T., 10/18/1994, at 46. Indeed, at trial, it was established that Shawn Wilson was in the apartment with Appellant at the time of the shootings. N.T., 10/18/1994, at 44–48. Accordingly, Appellant cannot establish that he was prejudiced by the trial court's ruling, and this issue fails on that basis alone. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 357 (1995) ("If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.").

Lastly, Appellant argues that the Commonwealth withheld this "exculpatory" material in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In order for a defendant to establish the existence of a *Brady* violation, he must establish that there has been a suppression by the prosecution of either exculpatory or impeachment evidence that was favorable to the accused, and that the omission of such evidence prejudiced the defendant. *See Commonwealth v. Morris*, 573 Pa. 157, 822 A.2d 684, 696 (2003); *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 305 (2002). Further, no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence. *Morris supra.*

In this case, trial counsel had equal access to the information, since trial counsel called Mark Sisco to the stand at trial for additional cross-examination. N.T., 10/19/1994, at 14–22. There is simply no basis for Appellant to contend that the Commonwealth withheld this evidence. Indeed, by Appellant's prior argument, he acknowledges that counsel could have uncovered this information with reasonable diligence. Accordingly, this issue is without merit.

Appellant next raises three arguments in support of his claim that counsel was ineffective for failing to challenge the ballistics evidence. First, Appellant asserts that the Common-

wealth's ballistic evidence was erroneous, since it did not compare the bullets from the Mark Sisco shooting to the bullets taken from the scene of the instant murders.[18] Rather, the expert erroneously compared the bullets taken from the scene of the instant murders to other bullets taken from the scene of the instant murders. Second, Appellant alleges that the Commonwealth violated *Brady* by suppressing ballistic evidence taken from the scene of a separate shooting that was also attributed to Appellant. Lastly, Appellant contends that the PCRA court erred in denying him an evidentiary hearing to determine whether trial counsel was ineffective for failing to request a fingerprint investigation be performed to find latent fingerprints on the bullets or fired cartridge casings.

Appellant's first argument is confounding. Even accepting Appellant's allegation that the documents that supported the expert testimony were confusing, the confusion in no way affected the ballistics expert's testimony at trial. Rather, the witness clearly testified that there were three bullets retrieved from the Mark Sisco shooting and that, following his examination of the bullets, he concluded to a reasonable degree of scientific certainty that two of the bullets were fired from the same weapon. N.T., 10/18/1994, at 161–63. The expert witness then testified that he examined the bullets from the instant murders and compared those "to the bullets ... from Mark Sisco." *Id.* at 165–66. Again, he concluded that the bullets were fired from the same weapon as that used in the shooting of Mark Sisco. Accordingly, the record does not support Appellant's allegation that the expert erroneously compared the ballistics evidence from the same shooting.

Appellant's reliance on *Brady* is similarly unavailing, since there is simply no basis for concluding that another bullet exists. Appellant bases his allegation on a witness that testified at Shawn Wilson's trial that she saw the police take a bullet out of a doorframe following the shooting. Aside from

---

18. This evidence was important to establish that Appellant committed the murders in this case, since Mark Sisco identified Appellant as his shooter and the ballistics evidence at trial established that the bullets from the scene of the Mark Sisco murder were fired from the same weapon as the bullets collected at the scene of the instant murders.

this one statement, however, Appellant points to nothing in support of his *Brady* claim, which would demonstrate that the Commonwealth possesses additional ballistics evidence that it failed to reveal to Appellant.

 Lastly, it is well settled that that a PCRA court does not need to conduct a hearing on all issues related to counsel's ineffectiveness. Pa.R.Crim.P. 909(B); *see Common-wealth v. Lewis*, 560 Pa. 240, 743 A.2d 907 (2000). A trial court's decision not to hold a hearing will only be reversed when the trial court abused its discretion.

 Like the prior argument, Appellant has not pointed to any evidence indicating that there were fingerprints on the bullets or casings taken from the scene of the crime or that such evidence, even if it existed, would have been exculpatory. Accordingly, Appellant cannot establish that he was preju-diced by trial counsel's action and this issue is without merit. *Travaglia, supra.*

Having concluded that the guilt phase issues do not entitle Appellant to relief, we now turn to the penalty phase issues. Appellant forwards two penalty phase issues in support of his petition for relief that were not addressed by the PCRA court, since it determined a third claim merited Appellant relief. The PCRA court awarded Appellant relief on his claim that trial counsel did not adequately investigate and present avail-able mitigating evidence during the penalty phase. The Com-monwealth challenges this determination and we will consider this issue first.

In this case, in awarding a new penalty phase hearing, the PCRA court focused on four main points: trial counsel did not uncover evidence related to Appellant's abusive childhood; trial counsel did not uncover evidence related to a head trauma sustained by Appellant in 1990; trial counsel failed to review Appellant's school and psychological records; and Dr. Tepper's [19] testimony at the PCRA hearing. Regarding Ap-pellant's background, at the PCRA hearing, Appellant pre-

19. Trial counsel presented Dr. Tepper as a psychological expert during the original penalty phase.

sented five family members who testified to the fact that he was abused by his father, paternal grandfather, and mother's boyfriends. The family members also testified as to Appellant's head trauma that he sustained in 1990.[20] With regard to two of Appellant's family members, who testified contrary to their testimony at the penalty phase of the trial, the PCRA court determined that they only met with trial counsel "briefly" immediately prior to the penalty phase hearing. At that meeting, they were told to say "good things" about Appellant. Furthermore, in support of the remaining findings, the PCRA court relied on the fact that counsel failed to secure relevant school and mental health records, which would have demonstrated that Appellant was diagnosed with serious emotional problems from an early age and that such problems were compounded by a head injury he sustained in 1990. Dr. Tepper testified that had he been presented with the documents he now had in his possession, he would have advised trial counsel to obtain a neurological examination and neuropsychological testing. At the PCRA hearing, Appellant presented two other experts corroborating Dr. Tepper's testimony. All three experts testified that given Appellant's cognitive defects and his emotional problems, Appellant was under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2), and his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired, 42 Pa.C.S. § 9711(e)(3). For these reasons, the PCRA court concluded that the evidence was relevant to two additional mitigating circumstances and that trial counsel was ineffective for failing to investigate evidence of mitigation. Accordingly, the court ordered a new penalty phase hearing.

The crux of the controversy regarding this issue is the performance prong of *Strickland* (arguable merit and lack of reasonable strategy in Pennsylvania). *See, e.g., Common-*

20. Apparently, in 1990, Appellant was hit in the head with a baseball bat and stabbed in the head, resulting in hospitalization. Although during the course of the PCRA hearing, the experts disputed the "seriousness" of the head injury, there was no question that Appellant sustained the 1990 head injury.

*wealth v. Malloy,* 579 Pa. 425, 856 A.2d 767 (Pa.2004). The question of whether the PCRA court erred in its determination that trial counsel was ineffective for failing to investigate and present mitigating circumstances depends upon a myriad of factors including the mitigation evidence that was actually presented, the reasonableness of counsel's investigation, and the mitigation evidence that could have been presented. *See Malloy.* None of these factors, however, is in and of itself dispositive of the question presented, since even if the investigation by counsel was unreasonable, such a fact alone will not result in relief if the claimant cannot demonstrate that he was prejudiced by counsel's conduct. *See, e.g., Commonwealth v. Brown,* 582 Pa. 461, 872 A.2d 1139, 1150 (explaining that a showing of prejudice is always a prerequisite to a claim alleging the ineffectiveness of counsel).[21]

A recent trilogy of cases highlights the fact that the reasonableness of counsel's investigation into mitigating circumstances is determined on a case by case basis. In *Malloy,* we provided an extensive roadmap for resolving this prong of the ineffectiveness inquiry. We reiterated the United States Supreme Court's focus in undertaking such an inquiry, explaining that "our principal concern in deciding whether [counsel] exercised 'reasonable professional judgment' is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [appellant's] background *was itself reasonable.*" *Malloy,* 856 A.2d at 784 (quoting *Wiggins v. Smith,* 539 U.S. 510, 522–23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (emphasis in original)).

In considering this question in *Malloy,* we first considered the investigation that counsel performed and the evidence that

21. As with all claims of ineffectiveness, we repeat that we review the PCRA court's findings to see if they are supported by the record and free from legal error. *Commonwealth v. Reyes,* 582 Pa. 317, 870 A.2d 888, 893 n. 2 (2005). Our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. *See, e.g., Commonwealth v. Meadius,* 582 Pa. 174, 870 A.2d 802, 2005 WL 711621 (2005).

counsel presented. We pointed out that counsel's overall trial preparation was lacking, as it consisted of minimal meetings with the appellant and his family members. *Id.* at 786, 788. We also noted that mitigation evidence concerning the appellant's background was available at the time of trial. *Id.* at 786. Thus, we concluded that the appellant proved that there were certain factors in his background which were easily discoverable even with minimal investigation. Id. at 788. After reaching this conclusion we further explained that "the onus is not upon a criminal defendant to identify what types of evidence may be relevant and require development and pursuit. Counsel's duty is to discover [mitigating] evidence through his own efforts, including pointed questioning of his client." *Id.* at 788.

We then acknowledged that counsel's investigation is dependent, in part, upon the information given to counsel by the appellant in the course of his investigation. We made clear, however, that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* Ultimately, we found that the failure of counsel to investigate was not based upon strategy, since counsel failed to conduct a cursory review of the appellant's background. "This is not a case where trial counsel had attempted to elicit relevant mitigation information from his client and family members, only to have childhood abuse, family problems, or other potential mitigation evidence within their knowledge not be mentioned." *Id.* For these reasons, in *Malloy,* we concluded that counsel's investigation was unreasonable.

In *Brown,* we were again asked to consider the reasonableness of counsel's investigation and presentation of mitigation evidence at the penalty phase. We first pointed out that the record at the time of trial indicated that the appellant did not suffer from any mental illness or abuse that would have prompted counsel to conduct a further investigation. *Brown,* 872 A.2d at 1150. Specifically, we noted that the information available to trial counsel did not alert counsel to further investigate such issues, since the appellant told the police he

had never been treated for mental health issues; a pre-sentence investigation report prepared by a psychologist indicated that the appellant reported no history of neurological, suicidal, or psychiatric problems; and the record indicated that the appellant had not been abused by his father. *Id.* at 1149 (referring back to the lack of record evidence in support of his claim regarding self defense). Thus, we concluded that the issue did not have arguable merit and the appellant did not prove that counsel did not undertake a reasonable investigation on the basis of the record that existed at the time of trial.

Lastly, in *Commonwealth v. Hall,* 582 Pa. 526, 872 A.2d 1177 (2005), we again faced an issue related to counsel's investigation and presentation of mitigation evidence. In disposing of this claim, we first noted that the "bald allegations" forwarded by the appellant, did not demonstrate that he suffered from any mental deficiencies as a result of the alleged abuse. *Id.* at 1188. Furthermore, in considering counsel's investigation, we found that trial counsel spoke with the appellant, his family, and friends for the express purpose of obtaining mitigating evidence, yet counsel was never informed of any alleged mental condition or of any mental abuse allegedly suffered by the appellant as a child. *Id.* at 1189. Indeed, we noted that over the appellant's objection, trial counsel put the appellant's mother on the stand to testify as to the appellant's good character and trial counsel testified that he did not put the remaining witnesses on the stand in light of the appellant's wish that no witnesses be called to testify on his behalf. *Id.* at 1190. Accordingly, we concluded that the appellant "has failed to demonstrate that his counsel was ineffective when he essentially followed [the appellant's] wishes in not presenting additional mitigating evidence." *Id.*

 Considering the findings of fact of the PCRA court and the evidence adduced at the PCRA hearing in the light most favorable to Appellant, we find that Appellant is entitled to relief on his claim of ineffectiveness. We are aware that this case is a step removed from *Malloy,* since here, counsel presented evidence of Appellant's "good character" and also

presented expert testimony demonstrating that Appellant had low intelligence, a history of drug and alcohol abuse, a lack of self esteem, and that Appellant lacked a male role model in his life because his father left the family when Appellant was young. Further complicating matters is the fact that Dr. Tepper asked Appellant whether he sustained any head injuries, and Appellant told him no. N.T., 11/8/2001, at 225. Moreover, at the PCRA hearing, it was suggested that Appellant's mother was uncooperative with trial counsel in preparing for Appellant's penalty phase and did not meet extensively with counsel.[22] Thus, there was evidence that counsel did some investigation for Appellant's penalty phase hearing.

We find, however, that even in light of these differences, similar to the counsel in *Malloy*, counsel did not undertake a "reasonable" investigation. Counsel could not remember whether he asked either Appellant or his family members whether Appellant had any medical history. N.T., 11/9/2001, at 77. Counsel admitted, however, that he did not ask Appellant or his family members whether Appellant ever sustained a head injury. N.T., 11/16/2001, at 17. Indeed, one of the witnesses at the PCRA hearing, who also testified at the penalty phase hearing, testified that she was aware of Appellant's head injury, but was only interviewed by counsel immediately before trial for a brief period of time and was told only to say "good things" about Appellant. N.T., 11/16/2001, at 55–57.

Additionally, counsel admitted that he did not obtain Appellant's school records[23], N.T. 11/9/2001, at 62, and never obtained a "social history" of Appellant from either Appellant or

22. While it is unclear exactly why Mother did not testify at Appellant's penalty phase, it was suggested that she did not have much faith in the legal system at the time of Appellant's trial, since her other son had recently been convicted of first degree murder and sentenced to death. It is clear, however, that several other family members testified at the penalty phase of Appellant's trial; and the evidence adduced at the PCRA hearing suggested that any interview of the remaining family members was brief and trial counsel told them only to say "good things" about Appellant.

23. At least one expert testified that the school records would have been helpful in assessing Appellant's overall mental ability. N.T., 11/8/2001, at 24–27.

his family members, N.T., 11/16/2001, at 40. Counsel understood a "social history" to include information regarding Appellant's background, i.e., whether Appellant had learning difficulties and significant problems in adolescence. *Id.* Based upon the testimony of the PCRA hearing, it appears that this testimony was readily accessible to counsel; and, like the situation in *Malloy,* was not uncovered because of counsel's failure to undertake a thorough investigation. Furthermore, aside from Appellant's misleading statement to Dr. Tepper, there was simply no evidence to suggest that relevant information was withheld during the interview process by Appellant or his family members. *Malloy,* 856 A.2d at 788. Indeed, as the PCRA court found, it was unclear whether the extended family members were even given the opportunity to give counsel relevant information about Appellant, since counsel met with them briefly and told them only to say "good things" about Appellant.[24]

The instant case is distinct from *Brown,* simply because here, there was relevant evidence that was available at the time of trial that could have been uncovered with minimal investigation. There is no question that medical records existed at the time of trial that would have demonstrated a serious head injury. If counsel had uncovered such evidence, the evidence would have led to a difference in the expert's

**24.** Moreover, our decision today is consonant with the United States Supreme Court's recent decision in *Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), wherein, the court held:

even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of the trial.

*Rompilla,* at 2458. In *Rompilla,* the court ultimately concluded that counsel was ineffective for failing to review a presentence investigative report that would have yielded "a range of mitigation leads that no other source had opened up." *Id.* at 2459. Although the conclusion in *Rompilla,* does not compel a particular result in this case since we are not dealing with counsel's failure to review a presentence report or other evidence that was in the possession of the Commonwealth, we find that the reasoning underlying such holding is consistent with our decision today, since *Rompilla* made clear that, under certain circumstances, it is simply not enough for counsel to rely on representations by the defendant, his family, and his friends.

recommendation to counsel and the expert's testimony at the penalty phase. In fact, such evidence would have led to the presentation of two additional mitigating circumstances, neither of which was offered during the penalty phase. Furthermore, unlike the situation in *Hall*, in this case, Appellant has presented more than "bald allegations" in support of his contentions and, as demonstrated by the expert evidence adduced at the PCRA hearing, has demonstrated that he suffered mental deficiencies as a result of the head injury and childhood abuse. For these reasons, we agree with the PCRA court's determination that counsel did not conduct a reasonable investigation to uncover the relevant mitigating evidence and thus, conclude that the Appellant established that his claim has arguable merit and counsel lacked a reasonable trial strategy.[25]

**25.** The concurring and dissenting opinion makes much of the fact that we have failed to discuss *Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52 (2003), in analyzing the instant issue. Furthermore, it believes that our decision in *Fears* is dispositive of Appellant's issue.

With all due respect, the responsive opinion overstates the impact of *Fears* on the instant case. First, it must be recognized that each time an appellant raises a colorable claim that trial counsel was ineffective for failing to present sufficient mitigation evidence during the penalty phase, the case must be analyzed considering the unique facts presented. No two capital defendants will have the same life histories and no two counsel will proceed in the identical manner. Thus, what is considered reasonable in one case will not necessarily be considered reasonable in another. Second, we are not overruling *Fears*, but rather find it distinguishable from the case at bar. In *Fears*, the trial court discounted the appellant's expert testimony establishing that the appellant suffered from severe mental impairments and concluded that trial counsel's performance in failing to present such evidence was reasonable. 836 A.2d at 53, n. 23. Here, the PCRA court found that trial counsel's performance *lacked* a reasonable basis. The PCRA court reached this conclusion by crediting the testimony of family members, who testified that trial counsel did not spend time preparing them or questioning them regarding Appellant's life history, but merely told them to say "good things" about Appellant. Such performance indicates a lack of preparation on counsel's part, rather than a failure of family members to come forth with relevant information. In addition to the failure of counsel to uncover "social history" information and information regarding Appellant's head injury, we have the additional fact that counsel admittedly did not procure relevant school and mental health records.

Having concluded that counsel's investigation was not reasonable, we still must consider whether such failure prejudiced Appellant. *Brown*, 872 A.2d at 1150. In this case, Appellant's experts testified that such evidence was relevant to establishing two additional mitigating factors that were not presented at trial. Thus, had the jury heard all of the relevant evidence, there is a reasonable probability that at least one juror would have found an additional mitigating circumstance and struck a different balance in weighing the aggravating and mitigating circumstances. *See Malloy*, 856 A.2d at 789.

For the reasons stated herein, we affirm the PCRA court's order denying Appellant relief on his guilt phase issues and granting relief on his penalty phase issue discussed *supra.*[26] Accordingly, this matter is remanded for a new penalty phase hearing.

Justice NIGRO, Justice NEWMAN and Justice BAER join the opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE files a concurring and dissenting opinion in which Justice EAKIN joins.

Justice SAYLOR, Concurring.

On the previous litigation point, I agree with the majority that our present criminal law jurisprudence lacks an adequate-

Finally, we acknowledge that this case presents somewhat of a "close call," but ultimately err on the side of finding in favor of Appellant, based, in part, on the deference that is due to a PCRA court's determination, *see* standard set forth *supra* at p. 62 n. 12, 888 A.2d at p. 574, n. 12. We emphasize that this area of the law is constantly evolving, with each case building on the case that came before. To rely solely on *Fears*, without considering our more recent decisions in *Malloy*, *Brown*, and *Hall*, would be unwise. We cannot ignore counsel's duty to pursue all mitigating evidence of which he should be reasonably aware. *See Commonwealth v. Zook*, 585 Pa. 11, 887 A.2d 1218, 2005 WL 3160270 (Pa.2005) (holding that trial counsel's performance lacked a reasonable basis when he failed to set forth an explanation for failing to pursue evidence that existed at the time of trial, which indicated that the appellant suffered a brain injury and resulting brain damage).

26. We need not reach the two issues Appellant raises regarding the penalty phase, since we are granting him a new penalty hearing.

ly developed and consistently applied construct to determine whether and to what degree a claim has been previously litigated.[1] I also agree that layered claims of ineffective assistance of counsel are regarded as distinct from underlying claims of trial error or ineffectiveness, in the sense that direct recourse to the underlying claim may no longer be available in light of the waiver doctrine. Nevertheless, the Court also recognizes that layered ineffectiveness claims are not wholly distinct from the underlying claims but are, in fact, derivative from those claims. *See, e.g., Commonwealth v. Gribble,* 580 Pa. 647, 675, 863 A.2d 455, 471–72 (2004). Since proof of the underlying claim is an essential element of the derivative ineffectiveness claim, I believe that the previous litigation doctrine should apply where the underlying claim has been fully and fairly litigated and deemed meritless, and a petitioner seeks nothing more on post-conviction review than a different and more favorable resolution of precisely the same claim that was previously rejected on direct appeal, albeit via an ineffectiveness overlay.

I therefore do not believe that the Court needs to or should discard the precept, as discussed by the majority, that a post-conviction petitioner may not obtain relief by the mere fact of layering. From my perspective, the primary difficulty that has arisen in the previous litigation context is that occasionally courts have not confined the doctrine's application to situations in which an essential element of the ineffectiveness claim has been fully and fairly addressed. Rather, courts have sometimes extended it to situations in which petitioners have sought to demonstrate that the underlying claim was not fully and fairly litigated on account of some dereliction by counsel,

1. In this regard, I am not of the view that the Court is woodenly bound by the PCRA's statutory references to previous litigation. Significantly, the Court has determined that, given the Legislature's desire to subsume the broadest possible range of post-conviction remedies within the PCRA's framework, the statute must in some respects yield to the Constitution's proscription against the curtailment of such remedies. *See Commonwealth v. Lantzy,* 558 Pa. 214, 222–25 & n. 4, 736 A.2d 564, 569–70 & n. 4 (1999). Consistent with this perspective, I do not believe that the codification of the previous litigation doctrine requires the Court to strip it of its prudential character.

such as a failure to raise or preserve the asserted error, present essential facts, or pursue a relevant and controlling legal theory before the initial reviewing courts.

In my view, in situations in which an underlying claim has been previously addressed, what is required to determine whether or not a layered ineffectiveness claim has been previously litigated is an evaluative assessment of whether the petitioner has set forth a good faith contention that counsel's deficient stewardship prevented a full and fair adjudication of the underlying issues. I also believe that the Court should recognize a manifest error exception to the application of the doctrine, particularly in capital cases, such that if a petitioner is able to demonstrate clear and manifest error on the part of the court in the initial review, relief should not be foreclosed by virtue of that review. Such exception would be consistent with the prudential character of the previous litigation doctrine, *see supra* note 1, and in furtherance of the interests of justice; moreover, I do not believe that it would unduly burden reviewing courts, particularly as the one-year limitation on the filing of post-conviction petitions has effectively limited most petitioners to a single state collateral challenge. *See Commonwealth v. Williams,* 566 Pa. 553, 565, 782 A.2d 517, 524 (2001).[2]

With regard to the balance of the majority opinion, I respectfully concur in the result.

Justice CASTILLE, Concurring and Dissenting.

Although I join the Majority Opinion in the denial of collateral guilt phase relief, I respectfully dissent from its affirmance of the grant of penalty phase relief.

## I. Guilt Phase

With respect to the guilt phase collateral claims, Majority op. at 51–71, 888 A.2d 567–79, I join the Majority Opinion with

2. Although my position would not require the Court to abandon the understanding that mere layering alone is not sufficient to overcome previous litigation, I would not continue to employ the rubric that previous litigation can never be overcome by presenting new theories of relief, *see, e.g., Commonwealth v. Beasley,* 544 Pa. 554, 565, 678 A.2d 773, 778 (1996), because I believe that such formulation is overbroad.

the exception of the following minor points concerning the previous litigation provision of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* First, I do not join in the Majority's oblique reference to retroactivity principles, where it cites to *Blackwell v. Com., State Ethics Com'n,* 527 Pa. 172, 589 A.2d 1094, 1101 (1991) for the proposition that "new rules of procedure are commonly applied only to the case currently pending before the court." Majority op. at 61–63, 888 A.2d at 574. The question of the proper scope of the PCRA's previous litigation bar is not one implicating a discretionary procedural "rule" fashioned by this Court. Rather, it is a lawful, substantive statutory requirement and this Court has no choice but to apply the existing statute as we understand it.

Second, in supplementation of the Majority's previous litigation analysis, which I otherwise join, I believe it is worth emphasizing that there is an obvious distinction between non-record-based claims of ineffective assistance of counsel (*e.g.,* failure to investigate, discover material evidence, or call witnesses) which will rarely be subject to a previous litigation bar, and claims which allege deficient attorney performance in the manner in which a particular claim was litigated in the trial court or upon direct appeal. With respect to the latter circumstance, it has too often been the case that this Court has been presented with a mere boilerplate assertion of counsel ineffectiveness attached to a new theory involving a record-based ruling which was already challenged and denied at trial or on direct review. Such undeveloped claims should always fail, and it may be a matter of semantics whether the failure is attributed to previous litigation or lack of (demonstrated) Sixth Amendment arguable merit. In addition, there are other instances where the manner of disposition on direct review (such as a finding that any alleged error was harmless) effectively operates to preclude relief upon any alternative theory advanced under the guise of ineffective assistance of counsel. *See, e.g., Commonwealth v. Gribble,* 580 Pa. 647, 863 A.2d 455, 462 (2004); *see also* Majority op. at 61–65, 888 A.2d at 574–75 (rejecting ineffectiveness claim respecting severance/due process "for the reasons discussed on direct appeal").

There obviously is an element of issue preclusion at work in such an instance. Having said this, I ultimately have no quarrel with the general distinction drawn by the Majority, which recognizes the constitutional underpinnings of counsel ineffectiveness claims. The Majority's analysis should encourage the bench and bar to pay heed to substantive requirements (*i.e.*, the elements of the claim) necessary to prove a viable Sixth Amendment claim of counsel ineffectiveness.

## II. Penalty Phase

The Majority affirms the PCRA determination of the Honorable Carolyn E. Temin (who was not the trial judge) that appellant's trial counsel was ineffective in 1994 for failing to uncover and present a different and supplemental case in mitigation focusing on appellant's supposedly abusive childhood, an alleged brain injury, and his cognitive dysfunctions. In granting a new penalty hearing, the PCRA court discussed none of the many cases from this Court which have considered similar issues, but instead, relied almost exclusively upon a select, non-binding Third Circuit panel decision, *Jermyn v. Horn*, 266 F.3d 257 (3d Cir.2001). I respectfully dissent from the Majority's affirmance of this grant of relief, as I do not believe appellant rebutted the presumption that his counsel was effective and the legal determination below, however much it may square with the Third Circuit's non-deferential approach to this Court's performance of its federal constitutional duty, flies in the face of binding authority from this Court. Moreover, I do not believe appellant has proven prejudice.

On the question of the performance aspect of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Majority assumes, as the PCRA court did, that a constitutionally reasonable investigation by counsel under standards extant in 1994 would have uncovered the additional mitigation evidence counsel is belatedly faulted for failing to uncover. I do not believe the record concerning counsel's performance compiled below, viewed through the deferential

and contemporaneous lens required of *Strickland,* and viewed through this Court's precedent, supports that assumption.

Trial counsel, John T. Drost, Esquire, testified at the PCRA hearing. Counsel noted that, by the time of appellant's trial, he had had considerable criminal trial experience, both as a prosecutor and as a defense attorney, experience which included over 100 murder cases defended and six prior capital trials. Counsel further noted that he was appointed to represent appellant in two other murder cases contemporaneously with the double murder at issue here; in one of those cases, counsel secured an acquittal and in the other the prosecution was dropped. Counsel then testified as to his penalty phase strategy and investigation into appellant's background. Counsel's overall strategy was to develop and present any mitigation evidence that he could muster. To that end, counsel retained Dr. Allan M. Tepper, who is both a licensed psychologist and an attorney, and a recognized expert witness in forensic psychology. Dr. Tepper, who also testified at the PCRA hearing, understood his task to be to evaluate appellant to determine if any mitigating circumstances existed.

In addition to retaining Dr. Tepper, counsel interviewed appellant, appellant's mother, appellant's fiancée, and other members of appellant's family. These family meetings were fruitful, as they revealed information which was positive about appellant, *i.e.,* that he had a loving relationship with family members and had performed numerous good works for family members and others in his community. Counsel presented this positive evidence at the penalty phase along with evidence from Dr. Tepper and, in point of fact, the jury found the "catchall" mitigator.

Given the passage of time since trial, counsel could not specifically recall what information he had provided to Dr. Tepper, but he noted that his general practice would have been to provide all discovery materials, the preliminary hearing notes, appellant's prior record, and some background concerning appellant and his case. Counsel also met numerous times with appellant, not only in connection with this case but in connection with appellant's other pending cases as well,

and thus counsel had an opportunity to observe and form his own opinion concerning appellant's mental functioning. Counsel noted that appellant was able to provide him with relevant information and consult with him in preparing the defense. Counsel noted that "only in hindsight" could he say so much as that appellant's "affect was extremely flat" which might have been an indication of some brain injury. Counsel noted, however, that he "absolutely" was aware that a flat affect could result from other causes and that, over the course of the two years he represented appellant, the idea of connecting his affect to organic brain damage simply "did not occur to me."

Counsel also noted that Dr. Tepper, who interviewed, examined and tested appellant, detected no evidence of organic brain damage or mental disease. Dr. Tepper's testimony confirmed this fact; in addition, Dr. Tepper noted that he had detected nothing that would warrant neuropsychological testing of appellant. As the Majority concedes, the doctor's failure to diagnose brain injury or impairment no doubt resulted at least in part from the fact that appellant had specifically denied suffering any head injuries. Indeed, it was Dr. Tepper's practice to ask his subjects whether they had ever been stabbed, shot, run over, been in a car accident, or hit in the head. Appellant disclosed no such medical/physical injury to the doctor. Further, appellant never informed Dr. Tepper that he had been the victim of any physical abuse. Whatever brain damage or impairment appellant had, obviously it was mild enough so as not to be apparent to counsel or to a trained mental health professional who spent hours interviewing and evaluating appellant. Surely, counsel cannot be faulted for assuming that the experienced mental health expert he retained specifically for mitigation purposes would uncover any such mental health mitigation evidence.

Counsel testified that he did not pursue the notion of a previous brain injury because his penalty phase preparations, as well as his interaction with appellant during a lengthy course of representation, gave him no reason to believe that appellant had suffered a significant head injury. Although counsel could not specifically recall if he had asked appellant

and his family questions concerning appellant's medical and "social" history and whether he had suffered any head injuries (counsel said that in all likelihood he did not specifically ask about prior head injuries or social history), counsel did note that if such information had been forthcoming by appellant or his family members he would have acted upon it and followed it up. In this regard, counsel noted that he certainly was aware at the time of trial that evidence of a prior significant head injury was an area that could be pursued in developing a defense case in mitigation.

In short, the record below demonstrates that the fact that counsel did not present mental health mitigation evidence does not mean that counsel failed to pursue such evidence—here, counsel clearly did, it just did not pan out. Similarly, the fact that counsel did not produce additional negative information concerning appellant's childhood, background, and mental state does not mean that counsel failed to develop and present a case in mitigation. To the contrary, counsel presented a cogent mitigation case consisting of the testimony of appellant, members of appellant's family, and Dr. Tepper, which served to personalize appellant and present him in a sympathetic light. Dr. Tepper thus told the sentencing jury that appellant's father had left the family home when appellant was nine or ten years old and that appellant subsequently lacked a stable male role model or "father figure," a circumstance which led him to develop behavioral problems in school. Continuing with this personalized social history, Dr. Tepper also informed the jury that appellant had slightly lower than average intelligence, that he had completed the tenth grade, and he opined that with some more effort and focus, appellant could succeed in academics or in his vocation. The doctor also noted that appellant had owned up to an "extensive drug and alcohol history or problem" that began with the very early use of marijuana and alcohol while in seventh grade, and then escalated into the frequent abuse of cocaine, cough syrup, and Valium. In addition to this expert psychological testimony, trial counsel presented testimony from several family members, including appellant's fiancée, three aunts, and two cous-

ins. These witnesses stated that appellant was an intelligent, sweet, loving, caring, and good man, who acted as an older brother to his younger cousins, was helpful to his aunts and grandmother, and had three children of his own. Significantly, none of those witnesses described the injury or abuse which forms the basis for the Majority's grant of a new penalty phase hearing.

Under this Court's authority, I do not see how counsel can be labeled ineffective upon a record such as this. Indeed, I see little material difference in the claim forwarded in this case and the claim forwarded and rejected in *Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52 (2003), a case which is front and center in the Commonwealth's brief. I understand why the PCRA court did not discuss *Fears*, since the case was decided after the court issued its opinion.[1] But I do not understand why *Fears* is ignored by the Majority, except in response to this dissent. Majority op. at 77–78 n. 25, 888 A.2d at 583–84 n. 25. In *Fears*, as here, trial counsel produced the testimony of a mental health expert at the penalty phase in support of the catchall mitigator and the trial court, sitting as factfinder, found that mitigator, but nevertheless returned a sentence of death. Fears later alleged that trial counsel was ineffective for failing to conduct an adequate mitigation investigation, one which would have uncovered additional evidence relating to his mental health and what might be called "social background," evidence which was similar in material respects to the undiscovered evidence at issue here. Thus, according to Fears, an adequate investigation would have revealed that he was prematurely born to a twelve-year old girl and suffered from cardiac arrest within an hour of birth, causing severe lack of oxygen to his brain; he was placed in foster care a few months later; and he suffered from a serious mental illness (including a diagnosis of "severe psychopathology including schizoid personality disorder and schizoaffective disorder"). *Fears*, 836 A.2d at 72–73. Fears argued, as appellant does

1. It is more perplexing why the PCRA court inexplicably ignored *all* authority from this Court on this commonly-recurring issue and instead followed only a Third Circuit panel decision.

here, that this evidence would have supported two additional and distinct mitigating circumstances, *i.e.,* extreme mental and emotional disturbance, 42 Pa.C.S. § 9711(e)(2), and substantial impairment of his capacity to appreciate the criminality of his conduct or to conform his conduct to the law. *Id.* § 9711(e)(3).

In an Opinion by Mr. Chief Justice Cappy, the *Fears* Court found that appellant's claim possessed arguable merit, but we denied relief after finding that counsel had a reasonable basis for not discovering and producing the additional evidence concerning the two mental health mitigators. The Chief Justice, writing for the Majority, emphasized that neither counsel's interactions with his client, nor the client's disclosures, had put counsel on reasonable notice that he should pursue this course:

> We reiterate that reasonableness in this context depends, in critical part, upon the information supplied by the defendant. *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d [717,] 735 [(2000)].... [T]rial counsel testified that Appellant displayed no overt psychotic behavior between the time of the arrest and trial.... Appellant also did not inform trial counsel of any mental impairment or of any birthing injury that would affect his mental stability at the time of the offense. Nevertheless, he presented psychiatric testimony in mitigation, albeit in support of the catchall mitigating circumstance.... We find [counsel's] performance in this regard reasonable. Based on the information trial counsel possessed at the time, he was not ineffective for failing to find another psychiatric expert who would support additional mitigating factors. Thus, trial counsel will not be deemed ineffective for "failing to present mitigation evidence that he did not know existed." *Commonwealth v. Roderick Johnson,* 572 Pa. 283, 815 A.2d 563 (2002).

*Id.* at 73–74 (footnotes and record citations omitted). If today's Majority means to overrule *Fears,* it should do so directly and with an explanation, rather than by inference.[2]

**2.** *Fears* is not an aberrational decision; to the contrary, it is consistent with a long line of Pennsylvania authority. *See, e.g., Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 45–46 (2002) (noting that "[c]ounsel

I know of no case or other authority extant in 1994 which required that defense counsel in all capital cases must ask the defendant and his family about prior head injuries or other mental health factors—instead, the Majority imposes that obligation upon counsel retroactively. Indeed, if there were such authority in 1994, we could not have rendered the decisions that we did in the *Fears* line of cases. Particularly where, as here, counsel's extensive interactions with his client, and the opinion of the mental health expert counsel retained, provided no indication that there was any fodder for mitigation in this area, I do not think counsel's investigation should be second-guessed. Based upon the facts adduced following counsel's reasonable course of investigation, counsel in this case presented a positive and cogent case in mitigation, one which personalized appellant and considered his background, and succeeded in convincing the jury that a mitigator existed. In light of this Court's long-standing precedent, counsel cannot be labeled ineffective.

The Majority "distinguishes" and dismisses *Fears* by suggesting that (1) the PCRA judge here, unlike the judge in *Fears*, found that counsel's performance was unreasonable, and this Court is obliged to defer to the PCRA court's assessment of reasonable basis; and (2) "this area of the law is constantly evolving," a rather strange articulation of legal principle which apparently means "only the most recent cases (or supporting cases) matter." Majority op. at 77–78 n. 25,

cannot be found ineffective for failing to introduce information uniquely within the knowledge of the defendant and his family which is not provided to counsel;" "[b]ecause appellant and his family, who were in a position to know about the additional childhood trauma to which appellant allegedly was exposed, failed to reveal that trauma to counsel, and appellant has not shown how counsel should otherwise have learned of it, counsel was not ineffective in this regard."); *Roderick Johnson, supra; Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592 (2000); *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435, 448 (1999) ("We have stated that we will not find that counsel was ineffective in failing to produce mitigating evidence relative to an alleged mental infirmity where there is no indication that counsel had any reason to know that the defendant might have a mental problem."); *Commonwealth v. Howard*, 553 Pa. 266, 719 A.2d 233, 238 (1998).

888 A.2d at 583–84 n. 25. Neither point is remotely persuasive in a *Strickland* inquiry.

Although this Court must defer to the credibility findings of the PCRA court in cases where contested material facts are at issue, the determination of the reasonableness of counsel's conduct under the Sixth Amendment—the performance prong of *Strickland*—is not one warranting any particular deference to the PCRA hearing judge, particularly where, as here, that judge is not the same judge who presided at trial. *Cf. Williams v. Taylor,* 529 U.S. 362, 396–99, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, if the Majority were correct that reviewing courts should defer to the PCRA judge's assessment of the reasonableness of counsel's performance, the U.S. Supreme Court could not have rendered its remarkable decision in *Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). As Mr. Justice Nigro's opinion on Rompilla's PCRA appeal noted, the PCRA court in that case held a hearing on the question of ineffectiveness respecting undiscovered additional mitigation evidence, determined that the claim had arguable merit, but then found that counsel's actions were reasonably based. This Court affirmed. *Commonwealth v. Rompilla,* 554 Pa. 378, 721 A.2d 786 (1998). The U.S. Supreme Court granted federal habeas corpus relief, by a narrow 5–4 margin, by simply rejecting the conclusions of the PCRA court respecting the reasonableness of counsel's performance, while finding this Court's application of *Strickland* in our reviewing capacity "objectively" unreasonable. Does the Majority mean to suggest that deference is due to the PCRA judge only when she rules in favor of the defendant concerning constitutional reasonableness?

With respect to the Majority's second point, the PCRA court certainly seemed to assert that it could simply pick and choose whichever precedent—here, non-binding Third Circuit precedent—supported its conclusion. Of course, the law matures and evolves. But, the *Strickland* inquiry requires an assessment of trial counsel's performance under the standards that existed when counsel tried the matter. The penalty phase in this case was in October 1994; the penalty phase in

*Fears* was *later,* in February 1995. The law would have had to *de-evolve* in order to fault counsel for failing to do what counsel in *Fears* also failed to do, while being deemed effective. As principled precedent, I fear, *Fears* simply is no more.

In lieu of the line of cases which includes *Fears,* the Majority discusses three recent cases, *Commonwealth v. Malloy,* 579 Pa. 425, 856 A.2d 767 (2004), *Commonwealth v. Brown,* 582 Pa. 461, 872 A.2d 1139 (2005), and *Commonwealth v. Hall,* 582 Pa. 526, 872 A.2d 1177 (2005), two of which (*Brown* and *Hall* ) involved claims deemed meritless, and the third of which (*Malloy* ) involved a finding of ineffectiveness and a grant of penalty phase relief. The Majority concedes that this case is "a step removed from *Malloy,*" but nevertheless concludes that appellant, like Malloy, is entitled to relief. Majority op. at 75–76, 888 A.2d at 582. But this case is more like a quantum leap removed from *Malloy. Malloy* involved a near total failure to undertake any effort to prepare or present a case in mitigation; indeed, counsel did not do so much as sit down with Malloy and discuss having family members testify on his behalf. Counsel conducted little investigation and presented no testimonial evidence at the penalty phase. Although counsel argued for two mitigating circumstances from the trial record, the jury found neither and it returned a sentence of death after finding the existence of a single aggravating circumstance. Counsel's penalty phase performance in *Malloy* was so remarkably inadequate that, on appeal, the Commonwealth conceded that counsel was ineffective, arguing only an absence of prejudice.

In contrast, counsel in this case did undertake an investigation and it was a reasonable one, as it included retaining a mental health professional, meeting with appellant and his family and presenting an actual case in mitigation, which resulted in the jury finding the existence of a mitigating circumstance. This case is more like *Brown, Hall, Fears* and such cases than it is like *Malloy,* a case occupying the outer limits of deficient performance.

I also respectfully disagree with the Majority's offhanded conclusion that appellant proved *Strickland* prejudice. In so

finding, the Majority cites only to *Malloy*, but without explanation; the Court thereby fails to appreciate *Malloy's* rather more sophisticated application of the prejudice standard. In *Malloy*, this Court analyzed prejudice, in pertinent part, as follows:

Although we recognize that the unpursued evidence in this case is not the strongest, we further note that trial counsel's presentation at the penalty phase included no affirmative evidence **at all,** but only a brief argument and a stipulation. Such a performance, which was not motivated by any strategic decision, left the jury with a dry assessment of appellant's individual circumstances. In short, it is not just the failure to present evidence of appellant's background which concerns us, but the fact that the failure occurred in a case where there was little effort to personalize appellant for the jury. Indeed, personalizing appellant's background may have made one or more of the jurors more likely to accept the other mitigating circumstances which were pursued. We are satisfied that it is probable that at least one juror would have accepted at least one mitigating circumstance and found that it outweighed the Commonwealth's single aggravating circumstance. Thus, had the jury heard testimony and been able to consider all of the mitigation evidence and argument together, there is a reasonable probability that at least one juror would have struck a different balance and voted not to impose the death penalty.

856 A.2d at 789 (emphasis original).

The circumstances here, respecting prejudice, are not the same as in *Malloy*. Counsel in the case *sub judice* went to great lengths to personalize his client for the jury, and indeed secured a finding that a mitigating circumstance existed. Moreover, I am unconvinced that there is a reasonable probability that the introduction of this somehow belatedly discovered evidence of appellant's childhood abuse and his head injury would have swayed a jury into returning a life sentence for both murders. This is a case where appellant shot one victim five times over an argument about a woman, shot at another person because appellant suspected she stole his money, and

five days later shot and killed two other victims. The jury found appellant guilty of two counts of murder and returned a sentence of death on each count. One of the aggravators found, as to each death penalty, was the multiple murder aggravator. As this author recently noted in *Commonwealth v. Zook*, 585 Pa. 11, 887 A.2d 1218, 1236 (Pa.2005) (Castille, J., concurring), 2005 WL 3160270, *11: "I think that it is unrealistic in the extreme ever to discount the difficult uphill battle any capital defense lawyer faces where, as here, one of the aggravating circumstances involves the fact that his client elected to commit multiple first degree murders. This is a mark of distinction that seems different in kind from other statutory aggravators." Even if I could fault counsel for failing to discover what appellant, appellant's family, and the mental health expert failed to discover/disclose until appellant found himself on death row, I am unconvinced that evidence of childhood abuse and brain damage would have resulted in a different weighing and different penalty verdict in a case such as this. Therefore, I dissent.

Justice EAKIN joins this concurring and dissenting opinion.