J-S10017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HENRY HILL, | |
| Appellant | No. 3458 EDA 2014 |

Appeal from the PCRA Order Entered November 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1000691-2003

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:     **FILED FEBRUARY 10, 2016**

Appellant, Henry Hill, appeals from the November 24, 2014 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The trial court set forth the facts of this case, as follows:

> On the afternoon of September 29, 2002, the decedent, Lance Harris, was standing on the corner of 27th and Tasker Streets in South Philadelphia. He had been in the neighborhood all that day with his cousin "Kelly" who was involved in an ongoing dispute with a group of people from the neighborhood. They had accused him of stealing something from one of them and had argued with him about it earlier that day.
>
> One of the Commonwealth witnesses, Gia Calloway, had actually overheard the defendant and other males threatening to "get Kelly" on the day of the shooting. They were all standing on a porch talking about the problem they had with Kelly when one

---

[*] Retired Senior Judge assigned to the Superior Court.

of them informed the group that Kelly was at the corner of 27th and Tasker Streets. Ms. Calloway continued walking past the porch and on to the corner. She told Kelly and the decedent that there were some "guys" who were "coming for them[,"] and that they should get off that corner.

Ms. Calloway testified that Kelly tried to get the decedent to leave the area with him, but that he refused to do so. The decedent said that he was staying because they did not have a problem with him, and that they were not going to do anything to him. Kelly left the corner, after that conversation with his cousin, and ran down the street.

[Appellant] and his group arrived at the corner shortly thereafter, and he immediately walked across the street and approached the decedent. He asked the decedent if he could speak to him, and they walked back across the street together. Ms. Calloway testified that [Appellant] started telling the decedent that "you're not from around here" along with other similar comments as the two of them exchanged words.

In the midst of that conversation, [Appellant] punched the decedent in the face and he fell to the ground. As the decedent attempted to get up, [Appellant] pulled out what Ms. Calloway described as a "black, shiny nine millimeter" handgun. [Appellant] fired one shot at the side of the decedent's abdomen. He ran from the scene as the decedent lay on the ground mortally wounded.

Uniformed police officers arrived at the scene before any emergency medical personnel were able to get there. They picked up the decedent, placed him [in] a patrol car, and transported him to the hospital. He was pronounced dead at the hospital after emergency operation procedures were unsuccessfully performed.

The Commonwealth called another eyewitness, Tanisha Saunders, who corroborated the account given by Ms. Calloway about [Appellant's] walking up and shooting the decedent. A third eyewitness, Rob Curry, had given the police a statement in which he recounted the exact same facts in some detail. However, when called by the Commonwealth to testify during the trial, he contended that he only heard the shooting, and that he did not actually see any of the interaction between [Appellant] and the deceased.

- 2 -

[Appellant] took the witness stand at trial, and testified on his own behalf. He admitted to walking over to the decedent, crossing the street with him, and engaging him in a conversation. He testified, however, that the decedent became angry while they were talking, and pulled out a knife and "swung" it at him. He told the jury that he avoided being stabbed only because he was able to back up very quickly. He stated that he felt "threatened" and that his "life was in danger". As a result, he "reached and pulled the gun out and shot him".

[Appellant] also admitted fleeing the scene of the crime, and leaving Philadelphia to go to Georgia. He contended that he only went to and stayed in Georgia so that his family would have time to raise money for his lawyer. He was eventually located by Philadelphia homicide detectives, arrested in Georgia, and brought back to Philadelphia on a fugitive warrant. Upon his return, he was charged with murder and the other related weapons offenses.

Trial Court Opinion, 9/15/08, at 3-6.

Following a multi-day jury trial that concluded on December 8, 2004, Appellant was convicted of first-degree murder, possessing an instrument of crime, and carrying a firearm without a license.

On February 24, 2005, the trial court sentenced [Appellant] to life imprisonment for the murder conviction, 3½ to 7 years of imprisonment for carrying a firearm without a license, and 2½ to 5 years of imprisonment for the PIC conviction. [Appellant] filed a timely direct appeal, which this Court dismissed on April 5, 2006 for failure to file an appellate brief. [Appellant] then filed a timely *pro se* PCRA petition on May 8, 2006. Counsel was appointed, who filed an amended PCRA petition, and [Appellant's] direct appeal rights were reinstated. [Appellant] filed a direct appeal, and this Court upheld his judgment of sentence on March 6, 2009. [***Commonwealth v. Hill***, 972 A.2d 553 (Pa. Super. 2009) (unpublished memorandum)]. Our Supreme Court dismissed [Appellant's] petition for allowance of appeal on September 9, 2009. [***Commonwealth v. Hill***, 980 A.2d 605 (Pa. 2009).] On February 10, 2010, [Appellant] filed a second, timely, *pro se* PCRA petition. Counsel was appointed who filed an amended petition, and on April 2, 2012, the PCRA court dismissed [Appellant's] petition.

*Commonwealth v. Hill*, No. 948 EDA 2012, unpublished memorandum at 1-2 (Pa. Super. filed July 8, 2012) (footnote omitted).

Appellant filed a timely appeal with this Court, arguing that the PCRA court erred by rejecting his claim that trial counsel, Gerald Ingram, Esq., acted ineffectively by failing to call two witnesses, Sarah McCluskey and Christopher Tate. According to Appellant, McCluskey and Tate could have corroborated his testimony that he shot Harris in self-defense. After review, we concluded that because the PCRA court had not conducted an evidentiary hearing, the record was insufficient to permit us to determine whether Appellant had satisfied *Commonwealth v. Brown*, 767 A.2d 576, 581-82 (Pa. Super. 2001), which sets forth a five-part test for proving that counsel acted ineffectively by not calling a witness. *See Hill*, No. 948 EDA 2012, unpublished memorandum at 6. Accordingly, we vacated, in part, the PCRA court's April 2, 2012 order denying Appellant's petition and remanded for further proceedings.[1]

On remand, the PCRA court conducted bifurcated evidentiary hearings on January 16, 2014, June 12, 2014, and August 14, 2014. On November 24, 2014, the PCRA court once again denied Appellant's petition. Appellant filed the present, timely appeal, as well as a timely Pa.R.A.P. 1925(b)

_____

[1] We affirmed the court's order to the extent that it denied Appellant's claim that Attorney Ingram acted ineffectively by not calling a third witness, Karen Williams, to offer character testimony on Appellant's behalf. *Id.* at 6.

- 4 -

statement. The PCRA court filed an opinion on March 24, 2015. Herein, Appellant presents two issues for our review:

> 1) The PCRA [c]ourt erred by denying post conviction relief where trial counsel, pursuant to the standards set forth in [] **Brown**, 767 A.2d [at] 581-82 …[,] was ineffective for failing to interview and call Christopher Tate and Sara[h] McCluskey[2] as fact witnesses to corroborate [Appellant's] self-defense claim in his homicide trial.
>
> 2) The PCRA [c]ourt erred in permitting into evidence and *considering* C-1[,] mistakenly referenced as C-2[,] during [the August 14, 2014] bifurcated evidentiary hearing. (purported Biographical Report of Christopher Tate which contained a statement allegedly made by Christopher Tate to an unavailable police officer to the effect that he (Tate) was not present when the incident occurred.[)]

Appellant's Brief at 4 (emphasis in original).

We begin by noting that, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).

In Appellant's first issue, he claims that Attorney Ingram acted ineffectively by not calling Sarah McCluskey and/or Christopher Tate as

---

[2] Appellant spells McCluskey's first and last name differently throughout his brief. We will spell her name, "Sarah McCluskey," as it is set forth in the record of the PCRA hearing conducted on January 1, 2014. **See** N.T. PCRA Hearing, 1/16/14, at 36.

defense witnesses at trial.[3]  Where a PCRA petitioner claims that he received

ineffective assistance of counsel, our Supreme Court has directed that the

following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]).  In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)].  Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner

---

[3] In regard to both McCluskey and Tate, Appellant suggests at points throughout his brief that Attorney Ingram was ineffective for failing to *interview* these witnesses, not just for failing to call them to the stand at trial.  **See** Appellant's Brief at 18, 19.  Appellant does not acknowledge, however, that, "the question of failing to interview a witness is distinct from failure to call a witness to testify."  **Commonwealth v. Dennis**, 950 A.2d 945, 960 (Pa. 2008) (citations omitted).  The **Dennis** Court clarified that an attorney's failure to interview witnesses is not *per se* prejudicial; instead, the burden remains on the petitioner "to plead and prove sufficient prejudice" resulted from *both* counsel's failure to interview *and* the failure to call the omitted witness.  **Id.** at 960-61.  Here, Appellant does not develop any meaningful argument regarding counsel's failure to *interview* McCluskey and/or Tate, instead simply interspersing in his brief several cursory references to counsel's failure to do so.  Accordingly, we will focus our review on whether counsel erred by not calling these individuals as witnesses at trial.

suffered actual prejudice as a result. ***Commonwealth v. Ali***, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Simpson***, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. ***See Ali, supra***. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Colavita***, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King***, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali***, 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland***, 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

Additionally, this Court stated in ***Brown***:

> To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the [appellant] must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

***Commonwealth v. Fletcher***, 561 Pa. 266, 292, 750 A.2d 261, 275 (2000). Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the witness's testimony would have been helpful to the defense. ***Commonwealth v. Auker***, 545 Pa. 521, 548, 681 A.2d 1305, 1319 (1996). "A failure to call

a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.*

**Brown**, 767 A.2d at 581-82.

Appellant first challenges Attorney Ingram's failure to call Sarah McCluskey. According to Appellant,

[a]t [the PCRA] evidentiary hearing[,] [Sarah McCluskey] testified that on the day [A]ppellant killed decedent in self[-] defense, around 12 o'clock in the afternoon, she was within 15 feet [of the shooting] amongst a crowd of over 10 people that witnessed the incident. Her view was unobstructed. [McCluskey] testified that she saw "[Appellant] swing on [Harris]. [Harris] pulled out a knife. [She] heard a shot and everybody started running. (Evidentiary Hearing, 1-16-14 N.T., pp. 41-44, 60, 62-64) [McCluskey] further testified that she was willing to provide a statement of what she witnessed. ([*Id.* at] pp. 48-49) [Sarah McCluskey's] testimony that decedent had a knife in hand when he was shot by [A]ppellant is consistent and credible. ([*Id.*] at 44, 63-66, 83)

Appellant's Brief at 17-18.

Initially, it is obvious that McCluskey exists (as she testified at the PCRA hearing), and the record confirms Appellant's claims that she was available and willing to testify on his behalf at the time of trial. *See* N.T. PCRA Hearing, 1/16/14, at 45. Thus, we conclude that the first, second, and fourth **Brown** factors are satisfied. We will also accept that Attorney Ingram knew, or should have known, about McCluskey, as the PCRA court found this factor met. *See* PCRA Court Opinion (PCO), 3/24/15, at 4 (stating that Attorney Ingram "knew that these witnesses[, *i.e.*, both McCluskey and Tate,] existed and were available"). Therefore, the third prong of **Brown** was proven by Appellant.

- 8 -

However, we agree with the PCRA court that Appellant failed to prove the final **Brown** factor of demonstrating that the omission of McCluskey's testimony caused him prejudice. **See** PCO at 5 ("Appellant cannot demonstrate that the testimony of either of these witnesses would have been helpful to the defense."). Appellant claims that he was prejudiced by McCluskey's absence because her testimony would have corroborated his claim of self-defense. **See** Appellant's Brief at 21-22. For the following reasons, we disagree.

At trial, Appellant testified that right before the shooting, he and the victim, Lance Harris, talked for "a good two, three minutes" before they "squared off and faced each other...." N.T. Trial, 12/2/04, at 130. Appellant described what happened next, as follows:

> [Appellant:] As we [were] talking, I'm just telling him just go ahead and leave, like you know how it is around here, I know you and if something happen [sic] to you, it's goin' [sic] be on me because you know I'm out here, I'm always out here, I live around here, so go ahead and leave before something happen [sic]. He said I ain't [sic] got to leave, this, that and that, and then he pulled out a knife, so I tried to back up and he swung. So I reached and pulled the gun out and shot him.

**Id.** Appellant also claimed that when Harris pulled the knife, Appellant fell back onto a gate behind him, and Harris "came at [him] in a thrusting motion." **Id.** at 131-132. Appellant stated that when he pulled out his gun, one shot was fired, but he did not know if he pulled the trigger or the gun just "went off." **Id.** at 138. Appellant repeatedly denied punching Harris at any point during the encounter. **Id.** at 142, 162.

The testimony of Sarah McCluskey at the PCRA hearing did not fully corroborate Appellant's testimony, and actually may have hindered his self-defense claim. Namely, McCluskey repeatedly stated that Appellant punched Harris prior to Harris' pulling out a knife. N.T. PCRA, 1/16/14, at 44, 62. McCluskey testified that after being hit, Harris "went backward" into a gate behind him. *Id.* at 66. She then stated, "when [Harris] fell back and pulled out his hand[,] that's when you heard the shot." *Id.*

McCluskey's testimony that Appellant punched Harris and that *Harris* fell backward before Appellant shot him differs significantly from Appellant's testimony that he never struck Harris, and that it was Appellant who fell backward during the encounter. Additionally, while McCluskey claimed that Harris pulled out a knife during the incident, her testimony did not corroborate Appellant's testimony that Harris thrusted that knife at Appellant.

We also stress that McCluskey's testimony was more corroborative of the Commonwealth's evidence, specifically the testimony of Gia Calloway and Tanisha Saunders, and the statement that Rob Curry gave to police shortly after the shooting. Specifically, Curry told police that Appellant "punched [Harris] two times and [Harris] … fell to the ground, and when he was trying to get up, that's when [Appellant] shot him." *See* N.T. Trial, 12/1/04, at 118. Gia Calloway similarly testified that, "[Appellant] punched [Harris]. [Harris] fell to the ground. [Appellant] pulled his gun out with his right hand … and shot [Harris] one time and [Harris] was still on the

- 10 -

ground." *Id.* at 162. Finally, Tanisha Sanders stated that she saw "[Appellant] hit [Harris] and then [Appellant] shot [Harris]." *Id.* at 47.

Because McCluskey also claimed that Appellant punched Harris, after which Harris fell backward and was shot by Appellant moments later, her testimony supported that of the Commonwealth's other witnesses. While McCluskey claimed that Harris had a knife, she did not testify that Harris was thrusting the knife at Appellant. Instead, she stated that Harris pulled the knife while falling backward, suggesting that Appellant could have fled in complete safety, and that Appellant shot Harris while Harris was in a defenseless position. Therefore, McCluskey's testimony would not have substantially corroborated Appellant's trial testimony, and may have actually assisted the Commonwealth in disproving Appellant's claim of self-defense had McCluskey been called to the stand. *See Commonwealth v. Rivera*, 108 A.3d 779, 791 (Pa. 2014) ("[T]he Commonwealth satisfies its burden of disproving self-defense where it proves any one of the following: the defendant did not reasonably believe that it was necessary to kill to protect himself from imminent death or great bodily harm; the defendant was not free from fault in provoking or continuing the difficulty which resulted in the slaying; or, the defendant violated a duty to retreat or avoid the danger."). Consequently, Appellant has not proven that the omission of McCluskey's testimony caused him actual prejudice.

Next, Appellant claims that Attorney Ingram's failure to call Christopher Tate to the stand constituted ineffective representation. To

summarize, Tate testified at the PCRA hearing that on the day of the shooting, he saw Appellant and Harris arguing, during which Harris pulled a knife and pointed it toward Appellant. N.T. PCRA Hearing, 8/14/14, at 17-18. After seeing Harris with a knife, Tate "heard a shot go off" but did not see who fired the gun. *Id.* at 18-19.

Even assuming that Appellant's ineffectiveness claim pertaining to Tate satisfies each of the five ***Brown*** factors, the record supports the PCRA court's conclusion that Attorney Ingram had a reasonable basis for not calling Tate as a defense witness. Initially, we stress that, "[w]ith regard to the … reasonable basis prong, we do not question whether there were more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (citation and internal quotation marks omitted).

Here, in concluding Attorney Ingram had reasonable grounds for not calling Tate, the PCRA court explained:

> First, [Attorney] Ingram learned that Tate allegedly intimidated a witness in the case, Gia Calloway. Second, there was no evidence admitted at trial that Tate was even involved himself in the sequence of events prior to and following the shooting. Specifically, Tate told police that he heard gunfire but was at Reed and Earp Streets and saw nothing.

PCO at 4.

Again, the record supports the court's decision. At the PCRA hearing, Attorney Ingram admitted that he was aware of Tate because Tate "was

named in the discovery from the [District Attorney's] office." N.T. PCRA Hearing, 1/16/14, at 12. Attorney Ingram explained that he did not interview Tate or call him to the stand because "it was alleged that he was tampering with [a] Commonwealth witness[,]" namely, Gia Calloway. *Id.* at 16-17, 23. Additionally, counsel stated that the pretrial discovery suggested that Tate was not present at the scene of the shooting. *Id.* at 17.

On cross-examination, the Commonwealth showed Attorney Ingram a "Biographical Information report" regarding Tate (hereinafter "the Report"), which Attorney Ingram "recall[ed] seeing with [the] discovery" prior to trial. *Id.* at 24. The Report stated that Tate:

> Know [*sic*] [Appellant] from the neighborhood. Had saw [*sic*] him a week ago. Heard gunfire but was on Reed and Earp Street. **Saw nothing.**"

*Id.* (emphasis added). Attorney Ingram was asked if the Report factored into his decision not to call Tate as a witness, and he replied, "Yes." *Id.* As stated *supra*, the PCRA court found that the allegation that Tate tampered with a witness, coupled with the Report's indication that Tate was not an eyewitness to the crime, demonstrated that Attorney Ingram had a reasonable basis for not pursuing Tate as a defense witness.

Appellant, however, disagrees. He argues that Attorney Ingram did not have a reasonable basis for deciding not to call Tate as a witness, "without first interviewing him[,]" because "counsel had no idea what Tate might testify to if called as a witness." Appellant's Brief at 19. This assertion is belied by the record, as counsel believed – based on the pretrial

- 13 -

discovery packet – that Tate would say he "saw nothing." N.T. PCRA Hearing, 1/16/14, at 24.

Additionally, Appellant stresses that when Tate testified at the PCRA hearing, he stated "that he was never accused of and/or arrested for, and in fact did not[,] intimidate any witness of this incident." *Id.* at 20 (citing N.T. PCRA Hearing, 8/14/14, at 23-24). While this is an accurate account of Tate's PCRA hearing testimony, whether Tate *actually did* intimidate Gia Calloway has little to do with our assessment of whether counsel acted reasonably in not calling Tate after hearing the *allegation* of this conduct. Appellant did not question Attorney Ingram about the specifics of the allegation against Tate, so as to cast doubt on the reasonableness of counsel's believing that allegation without further investigation. Accordingly, the record supports the PCRA court's determination that the allegation of witness tampering, combined with the report stating that Tate was not an eyewitness to the shooting, provided Attorney Ingram with reasonable grounds for not calling Tate to the stand.

Appellant next challenges the PCRA court's admission, and consideration of, the Report containing Tate's statement to a detective that he did not see the shooting. Appellant argues that "[t]he PCRA court abused its discretion in admitting [the Report] … as if it were a business record pursuant to Rule 803(6) of the Pennsylvania Rules of Evidence (Pa.R.E.), as the contents thereof, specifically the language[,] 'Knows [Appellant] from the neighborhood, last saw him a week ago, heard gunshot but was on Reed

and Earp St., saw nothing' is hearsay and does not meet the qualifications to be admitted as a business record." Appellant's Brief at 24 (quoting the Report). Appellant further maintains that because the detective who completed the Report was unavailable to testify at the PCRA hearing, the court's "consideration of [the Report's] contents as substantive evidence … violated [his] constitutional right guaranteed to him under the United States and Pennsylvania Constitutions to confront and cross-examine witnesses." Appellant's Brief at 29-30.

We begin by noting:

Our standard of review relative to the admission of evidence is for an abuse of discretion. *Commonwealth v. Feliciano*, 67 A.3d 19, 27 (Pa. Super. 2013). The admissibility of hearsay is addressed in Rules 801, 802, and 803 of the Pennsylvania Rules of Evidence. Rule 801(c) defines hearsay as "a statement ... offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay evidence is inadmissible under Rule 802. Out of court statements are not inadmissible hearsay, however, if they are offered for some relevant purpose other than to prove the truth of the matter asserted. *Commonwealth v. Ali*, 608 Pa. 71, 126, 10 A.3d 282, 315 (2010); *Commonwealth v. Puksar*, 559 Pa. 358, 368, 740 A.2d 219, 225 (1999).

*Commonwealth v. Wantz*, 84 A.3d 324, 336 (Pa. Super. 2014).

By way of background, the record reveals that the Report was utilized by the Commonwealth on two different occasions during the bifurcated PCRA proceedings. First, at the hearing on January 16, 2014, during the Commonwealth's cross-examination of Attorney Ingram, it referred to the Report and used it to question counsel, as discussed *supra*. **See** PCRA

Hearing, 1/16/14, at 24-27. Then, at a hearing on August 14, 2014, the Commonwealth again used the Report to impeach Christopher Tate's testimony that he was at the scene of the shooting and saw the victim with a knife. *See* N.T. PCRA Hearing, 8/14/14, at 40-45.

The PCRA court ruled that the Report was admissible under the business-records exception to the rule precluding hearsay. *See* PCO at 7-8; Pa.R.E. 803(6). We need not assess whether the PCRA court's ruling is correct, as there are other grounds to reject Appellant's claim that the court erred by admitting, and considering, the Report.

First, when the Report was first introduced by the Commonwealth during the testimony of Attorney Ingram, Appellant did not object on the basis that the Report constituted hearsay; instead, he argued that the report "wasn't disclosed before" and the Commonwealth had not demonstrated that Attorney Ingram "specifically … saw the document before." N.T. Trial, at 24, 26. The court directed the Commonwealth to ask Attorney Ingram "whether or not this was part of the discovery package that was provided." *Id.* at 27. Before the Commonwealth did so, the court asked Appellant's counsel if he had any objection to the Commonwealth's questioning Attorney Ingram as such. *Id.* at 27. PCRA counsel stated that he did not, and the Commonwealth questioned Attorney Ingram without further objection by Appellant's counsel. *Id.* at 27-28.

On appeal, Appellant does not challenge the court's admission of the Report for the reasons he expressed at the PCRA hearing on January 16,

2014; therefore, we do not address whether the court's decision in that regard was error. Further, because PCRA counsel did not, during the testimony of Attorney Ingram, object to the Commonwealth's use of the Report on the basis that it constituted hearsay, he has waived any such objection on appeal. **See Commonwealth v. Lopez**, 57 A.3d 74, 81-82 (Pa. Super. 2012) ("A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal.") (internal citations and quotation marks omitted). Therefore, the court did not err in permitting the Commonwealth to use the Report during the testimony of Attorney Ingram.[4]

Additionally, even if we accepted Appellant's argument that the Report constituted inadmissible hearsay when the Commonwealth utilized it during

_____

[4] In any event, we note that the Report did not constitute hearsay at this point in the PCRA proceedings. When the Report was used by the Commonwealth to question Attorney Ingram, it was not being offered to prove the *truth* of the matter asserted therein, *i.e.*, that Tate only heard a gunshot but saw nothing. Instead, the Commonwealth used the Report to show what information Attorney Ingram had considered in deciding whether to call Tate to the stand at trial. Thus, the Report did not constitute hearsay. **See Wantz**, 84 A.3d at 336 (concluding that two reports, one by a detective and another by a doctor, admitted at a PCRA hearing did not constitute hearsay where they were not admitted "for the truth of the matters set forth therein, but rather for the purpose of establishing counsel's strategic basis for not calling [a certain witness] to testify").

the testimony of Tate, the court's admission of it at that point was not "harmful or prejudicial" to Appellant so as to constitute reversible error. *Lopez*, 57 A.3d at 81 ("To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party."). Specifically, the record demonstrates that the court *only* considered the Report in the context in which it was *first* admitted, *i.e.*, during the testimony of Attorney Ingram, to prove that Attorney Ingram had a reasonable basis for not pursuing Tate as a defense witness. The court did *not* consider the Report as substantive evidence that refuted Tate's testimony that he witnessed the shooting and saw the victim with a knife. Therefore, any error in the court's allowing the Commonwealth to use the Report when cross-examining Tate was not harmful or prejudicial to Appellant.

Finally, we reject Appellant's claim that the admission of the report violated his Confrontation Clause rights. In *Wantz*, we addressed a similar claim, raised in the context of a post-conviction proceeding, stating:

> The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI.6[.] In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court ruled that where the prosecution presents testimonial hearsay, the only indicium of reliability sufficient to satisfy the Sixth Amendment and permit the admission of the hearsay is "confrontation." *Id.* at 68–69, 124 S.Ct. 1354.

According to our Supreme Court, "[a]t its most basic level, the Sixth Amendment's Confrontation Clause seeks to ensure that the trial is fair and reliable by preserving an accused's right to cross-examine and confront the witnesses against him." ***Commonwealth v. Collins***, 585 Pa. 45, 64, 888 A.2d 564, 575 (2005). The focus of claims of violation of this constitutional right is on the fairness and reliability of the criminal defendant's ***trial***. Wantz has cited to no authority holding that a Confrontation Clause challenge may be asserted in non-trial proceedings, including during PCRA evidentiary hearings. ***See, e.g., United States v. Stone***, 432 F.3d 651, 654 (6th Cir.2005) (because ***Crawford*** focused only on testimonial evidence at trial, "it does not change our long-settled rule that the Confrontation Clause does not apply in sentencing hearings"), *cert. denied*, 549 U.S. 821, 127 S.Ct. 129, 166 L.Ed.2d 35 (2006). To the contrary, on at least two occasions our Supreme Court has held that Confrontation Clause issues may not be asserted in collateral proceedings. ***See Commonwealth v. Collins***, 585 Pa. 45, 65 n. 15, 888 A.2d 564, 576 n. 15 (2005) ("***Crawford***, however, is unavailable to claimants on collateral review...."); ***Commonwealth v. Gribble***, 580 Pa. 647, 663 n. 7, 863 A.2d 455, 464 n. 7 (2004) ("We need not concern ourselves with that question, as this is a collateral attack, and ***Crawford*** does not apply.").

***Wantz***, 84 A.3d at 337 (emphasis in original). Here, as in ***Wantz***, Appellant fails to cite any authority holding that the Confrontation Clause applies to post-conviction proceedings. Accordingly, his argument that his rights under that clause were violated during the PCRA hearing is meritless.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/10/2016</u>