J-S68009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES H. SHRIEVES | : | |
| | : | |
| Appellant | : | No. 576 MDA 2017 |

Appeal from the PCRA Order March 21, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003090-2013

BEFORE: LAZARUS, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.: **FILED JANUARY 03, 2018**

James H. Shrieves appeals from the order, entered in the Court of Common Pleas of Lancaster County, dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

On January 1, 2013, at approximately 5:15 a.m., Lancaster County Police Officer Thomas Cole responded to an emergency call to assist EMTs providing medical care to Shrieves' fiancée, Anika Munoz-Brown. Munoz-Brown was suffering from cardiac arrest. Upon arrival, Officer Cole went to the second floor of Shrieves' residence, where Munoz-Brown was receiving medical attention. While EMTs Alyta Stum and Luke Dunn administered CPR to Munoz-Brown, Officer Cole collected Munoz-Brown's demographic, medical and other pertinent information from Shrieves. The EMTs informed Shrieves that further efforts to resuscitate Munoz-Brown were unlikely to succeed, but

_____

* Retired Senior Judge assigned to the Superior Court.

Shrieves implored the EMTs, in the presence of Officer Cole, to do everything they could.

Eventually, medical personnel determined that the EMTs would transport Munoz-Brown to Lancaster General Hospital. The EMTs asked Shrieves to gather Munoz-Brown's medication for treatment purposes. Shrieves went into the second floor bedroom, opened a cabinet and began gathering Munoz-Brown's pill bottles; Officer Cole was standing approximately two to three feet from Shrieves as he collected Munoz-Brown's medication. Officer Cole indicated that Shrieves needed to hurry if he wanted to travel in the ambulance with Munoz-Brown because the EMTs would not wait for him. Shrieves then moved from the cabinet to a small nightstand where he retrieved a large plastic bag holding multiple small baggies containing white substances. Officer Cole inquired as to what was in the bag, after which Shrieves dropped the bag into a purse in front of him and picked up a set of keys. Shrieves told Officer Cole he had only the keys in his hand.

Officer Cole looked into the purse, which was open, and saw the large plastic bag lying on top of the contents of the purse. Officer Cole, believing the smaller baggies contained narcotics, recovered the bag, verified it contained crack cocaine, and searched Shrieves for additional contraband. Officer Cole did not find additional contraband on Shrieves' person and, given the circumstances, he permitted Shrieves to go to the hospital with his fiancée. Police secured the area and later obtained Shrieves' consent to search the

residence. During the search, a firearm was located in a drawer in the bedroom.

On September 10, 2013, Shrives filed a motion to suppress the physical evidence seized from his home. Following a hearing, the trial court denied Shrieves' motion to suppress by opinion and order dated February 12, 2014. After the trial court, *sua sponte*, severed the person not to possess firearms count from the information, Shrieves proceeded to a jury trial on that individual charge. On November 13, 2014, the jury found Shrieves guilty of person not to possess a firearm. On January 21, 2015, the trial court found Shrieves guilty of possession with intent to deliver ("PWID") cocaine and possession of drug paraphernalia. On the same day, the trial court sentenced Shrieves to four to eight years' imprisonment for persons not to possess a firearm and eighteen to thirty-six months' imprisonment for PWID, which the trial court imposed concurrently. Shrieves filed a direct appeal, which this Court rejected on December 16, 2015. ***Commonwealth v. Shrieves***, 346 MDA 2015 (Pa. Super. filed December 16, 2015) (unpublished memorandum).

On January 11, 2016, Shrieves filed a timely *pro se* motion for post-conviction collateral relief pursuant to the PCRA. On February 4, 2016, the trial court appointed Vincent J. Quinn, Esquire, as Shrieves' PCRA counsel. On May 18, 2016, Shrieves filed an amended petition for post-conviction collateral relief. Following an evidentiary hearing, the trial court denied Shrieves' amended petition by order dated March 21, 2017. On March 29, 2017,

Shrieves filed a timely notice of appeal. Both Shrieves and the trial court have complied with Pa.R.A.P. 1925. On appeal, Shrieves raises the following issue:

> Whether the lower court erred in denying [Shrieves'] amended PCRA [petition] when trial counsel was ineffective by failing to call [Stum] and [Dunn] as witnesses at the suppression hearing when their testimony would have established that the emergency aid exception to the warrant requirement was not applicable and that all evidence seized from [Shrieves,] including drugs and a firearm[,] was obtained in violation of [Shrieves'] rights under the Fourth Amendment to the United States Constitution.

Brief of Appellant, at 4.

Instantly, Shrieves avers that EMTs Stum and Dunn's testimony would controvert the applicability of the emergency aid exception and his suppression counsel's failure to call them as witnesses prejudiced his defense.

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (citing *Strickland v. Washington*, 466 U.S. 688, 687-91 (1984)). To prevail on an ineffectiveness claim, the petitioner has the burden to prove that "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Commonwealth v. Sneed*, 45 A.3d 1096, 1106 (2012) (quoting *Commonwealth v. Pierce*, 786 A.2d 203, 213 (2001)). "A petitioner establishes prejudice when he demonstrates there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (quoting *Strickland*, 466 U.S. at 694). The failure to satisfy any one of the three prongs will cause the entire claim to fail. *Sneed*, 45 A3d at 1106. Finally, because a PCRA petitioner must establish all three prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015).

To establish that counsel was ineffective for failure to call a witness, appellant must demonstrate that:

> (1) [t]he witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; (5) *the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial*. Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matter of trial strategy.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007) (emphasis added). It is appellant's burden to demonstrate that counsel had no reasonable basis for declining to call a potential witness. *Id.*

Further, a post-conviction claim of ineffective assistance of counsel must raise a distinct legal ground, rather than an alternative theory in support of the same underlying issue that defendant raised on direct appeal, and thus, ineffectiveness claims are distinct from previously litigated issues and may be

brought up in post-conviction proceedings. **See Commonwealth v. Collins**, 888 A.2d 564, 570 (Pa. 2005). Accordingly, a petition for relief under the PCRA cannot obtain PCRA review of previously litigated claims decided adversely to him in his direct appeal simply by presenting those claims again in a PCRA petition and setting forth new theories of relief in support thereof. 42 Pa.C.S.A. § 9544(a)(2); **Commonwealth v. Hutchins**, 760 A.2d 50, 55 (Pa. Super. 2000).

Shrieves claims that trial counsel, Jennifer Santiago, Esquire, failed to call EMTs Stum and Dunn as witnesses at his suppression hearing, and thus, prejudiced his defense. Specifically, Shrieves asserts that EMTs Stum and Dunn's testimony would have repudiated the applicability of the emergency aid exception. This claim is meritless. Shrieves has already litigated the issue of whether the emergency aid exception was applicable when Officer Cole discovered contraband in Shrieves' residence.[1] **Shrieves**, **supra**.

---

[1] This Court, in deciding Shrieves' direct appeal, addressed the issue of whether the emergency aid exception was in effect when Officer Cole viewed contraband in plain sight. There, we determined that:

> [T]he emergency aid exception[] applies when "police reasonably believe that someone within a residence is in need of immediate aid." **Commonwealth v. Galvin**, 985 A.2d 783, 795 (Pa. 2009)[.]
>
> \* \* \*
>
> The relevant inquiry is "whether there was an objectively reasonable basis for believing that medical assistance was

On direct appeal, this Court determined that Munoz-Brown's "medical emergency had not dissipated when Officer Cole observed in plain view Shrieves attempting to conceal baggies of crack cocaine." *Id.* at 9; *see also Galvin*, 985 A.2d at 795 ("Generally, the police will be excused from compliance with the warrant and probable cause requirements of the Fourth

---

needed, or persons were in danger[.]" *Commonwealth v. Potts*, 73 A.3d 1275, 1280 (Pa. Super. 2013)[.]

\* \* \*

[T]he medical emergency had not yet dissipated when Officer Cole observed in plain view Shrieves attempting to conceal baggies of crack cocaine. While the EMTs attempted to resuscitate [Munoz-Brown] in the bedroom, Shrieves spoke with police in the hallway. He relayed to the police [Munoz-Brown's] basic demographic information, her symptoms, her medical history, and the name of her physician. As the EMTs moved [Munoz-Brown] out to the ambulance, one of them asked Officer Cole and Shrieves about [Munoz-Brown's] current prescriptions. Shrieves said that he would gather [her] medication bottles. Officer Cole followed Shrieves into the bedroom and told him that he needed to hurry if he wanted to go to the hospital in the ambulance. When Officer Cole saw Shrieves discard crack cocaine, he asked Shrieves "if [Munoz-Brown], by chance, used drugs at all." [] Officer Cole told Shrieves that "it was important for [the] EMTs to know" if [Munoz-Brown] had used any controlled substances, and that it would help them treat her. *Id.* Officer Cole did not arrest Shrieves at that time.

When responding to emergencies such as this one, police, fire and medical personnel must act swiftly and efficiently. It is reasonable to expect that EMTs might depend upon responding officers to collect vital information needed to accurately diagnose or treat the patient. That is exactly what happened in this case.

*Commonwealth v. Shrieves*, 346 MDA 2015 (Pa. Super. December 16, 2015).

Amendment to the United States Constitution in only limited circumstances[;] one of these circumstances is when the police reasonably believe that someone within a residence is in need of immediate aid."). Presently, Shrieves advances a new suppression theory, couched in an ineffective assistance of counsel claim, asserting that the EMTs' testimony conclusively establishes that the emergency aid exception was not applicable when police discovered contraband in his residence. This Court has already visited the issue of whether the emergency aid exception was in effect, and thus, we decline to reexamine that claim. **Hutchins**, **supra**.

Moreover, Attorney Santiago had a reasonable basis for not calling EMTs Stum and Dunn as witnesses at the suppression hearing. Attorney Santiago theorized no exigency existed that specifically permitted Officer Cole to enter Shrieves' bedroom when he went to retrieve Munoz-Brown's medication; furthermore, Shrieves did not consent to Officer Cole entering his bedroom, N.T. PCRA Hearing, 11/1/16, at 26, and thus, the contraband discovered in plain view was inadmissible. Attorney Santiago further theorized that Shrieves' distressed emotional state, due to Munoz-Brown's cardiac arrest, invalidated any consent he *later* gave police to search his residence. Attorney Santiago, while aware of the emergency aid exception, **id.**, chose not to raise the issue of whether the emergency aid exception was applicable at the time Officer Cole discovered contraband in Shrieves' residence.

The emergency aid exception applies when "police reasonably believe that someone within a residence is in need of immediate aid." **Galvin**, 985

A.2d at 795. Here, Shrieves admitted that he was "excited throughout the process," and that "he was the one demanding that [Munoz-Brown] be transported" to the hospital to receive further medical care. N.T. PCRA Hearing, 11/1/16, at 27-28. Accordingly, Attorney Santiago's suppression theory accounted for Shrieves' "excited" behavior, which largely contributed to the EMTs' decision to continue to resuscitate Munoz-Brown and transport her to the hospital. *Id.* at 27 ("I found that [Shrieves] was excited throughout the process. He was the one demanding that [Munoz-Brown] be transported [to the hospital]"). *Id.* Under such circumstances, it was reasonable for Attorney Santiago to theorize that such behavior would cause Officer Cole to believe that the emergency aid exception was applicable when he entered Shrieves' bedroom. *Galvin*, *supra*.

Attorney Santiago also considered the Lancaster Emergency Medical Services Agency ("LEMSA") report, which detailed the actions of EMTs Dunn and Stum. Attorney Santiago ultimately concluded that the EMTs' testimony would not repudiate the existence of the emergency aid exception in light of Shrieves' excited emotional state and his directive to continue resuscitating Munoz-Brown. N.T. PCRA Hearing, 11/1/16, at 26-27. Moreover, Shrieves did not suggest that Attorney Santiago call EMTs Stum and Dunn as witnesses until the conclusion of his suppression hearing. *Id.* at 28. Accordingly, Attorney Santiago determined that the EMTs' testimony would not contribute to her suppression theory, and so she did not interview them prior to Shrieves' suppression hearing. *Id.* at 27-28. *Commonwealth v. Johnson*, 966 A.2d

523, 535-36 (Pa. 2009) (counsel has general duty to investigate and/or interview potential witnesses; however, counsel may also make reasonable decisions given circumstances that render particular investigation unnecessary). Attorney Santiago ultimately concluded there was no reasonable strategic basis for calling the EMTs to testify at Shrieves' suppression hearing. **Snead**, **supra**. **See Commonwealth v. Pittman**, 44 A.2d 436, 438 (Pa. Super. 1982) (failure to call witness whose testimony would be helpful to defense constitutes ineffective assistance of counsel unless counsel has reasonable basis for decision not to call witness)

Shrieves' attempt to recast his suppression argument as an ineffective assistance claim warrants no relief. Furthermore, we do not discern that Attorney Santiago lacked a reasonable basis for not calling EMTs Stum and Dunn or that the exclusion of such testimony prejudiced Shrieves' defense.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2018